**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 14, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MICHAEL D. VAN DEELEN,

      Plaintiff-Appellant,

v.

MARION JOHNSON; STEVEN
MILES; DALE FLORY; KENNETH
FANGOHR; KEN MCGOVERN; and
BOARD OF COUNTY
COMMISSIONERS OF DOUGLAS
COUNTY, KANSAS,

      Defendants-Appellees.

No. 06-3305

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 05-CV-4039-SAC)**

Michael D. Van Deelen, filed a brief *pro se*.

Nicholas P. Heinke of Hogan & Hartson, Denver, Colorado, for Plaintiff-Appellant.

Peter T. Maharry (Michael K. Seck and Daniel P. Goldberg on the brief), of Fisher, Patterson, Sayler & Smith, Overland Park, Kansas, for Defendants-Appellees.

Before **HARTZ, McKAY,** and **GORSUCH**, Circuit Judges.

**GORSUCH**, Circuit Judge.

Michael D. Van Deelen alleges that the Board of County Commissioners of Douglas County, Kansas, as well as five county officials, violated his First Amendment rights by seeking to threaten and intimidate him into dropping various tax assessment challenges. The United States District Court for the District of Kansas, in reliance on a number of its prior holdings, granted summary judgment for the defendants on the basis that Mr. Van Deelen's tax challenge was not a matter of "public concern." We write today to reaffirm that the constitutionally enumerated right of a private citizen to petition the government for the redress of grievances does not pick and choose its causes but extends to matters great and small, public and private. Whatever the public significance or merit of Mr. Van Deelen's petitions, they enjoy the protections of the First Amendment. Accordingly, we reverse and remand.

I

A

Viewing the facts pertinent to the current dispute, as we must, in the light most favorable to Mr. Van Deelen as the party opposing summary judgment,[1] his

---

[1] Additionally, all of Mr. Van Deelen's filings in the district court and this court were prepared *pro se* and are thus entitled to a solicitous construction. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007); *see also Riddle v. Mondragon*, 83 F.3d 1197, 1201-02 (10th Cir. 1996). Mr. Van Deelen was, however,

(continued...)

tangle with the County began in 1991. That year, Mr. Van Deelen purchased a home that, shortly after the transaction settled, suffered from repeated flooding. After a particularly severe episode in 1993, Mr. Van Deelen sued the County and the City of Eudora, in which the home is located, complaining that a nearby culvert was undersized and contributing to the flooding. The County and City eventually paid him a sum for his damages and replaced the culvert with a bridge; thereafter, Mr. Van Deelen dismissed his suit.

Beginning in 2000, Mr. Van Deelen believed that the County's annual increases in the assessed value of his home unfairly overstated his home's true market value, in part by inadequately accounting for what he perceived to be a continuing threat of flooding. During the next several years, he unsuccessfully appealed the County's assessments at approximately eight different administrative hearings. In the course of these appeals, Mr. Van Deelen interacted frequently with both Marion Johnson, the County Appraiser, and Steven Miles, an appraiser in Mr. Johnson's office. Bad blood soon set in.

In one 2002 hearing, Mr. Van Deelen allegedly made "accusatory"and "derogatory" remarks towards Mr. Miles that prompted the hearing officer to discontinue the proceedings. In spite of this incident, Mr. Miles agreed to meet again with Mr. Van Deelen the following week at the Appraiser's office, located

[1](...continued)
represented at oral argument before us by court-appointed counsel, Nicholas P. Heinke, whom we wish to thank for his generous and able *pro bono* advocacy.

in the old Douglas County Courthouse. Before that meeting, however, Mr. Miles expressed to Mr. Johnson his concern about Mr. Van Deelen's behavior; in turn, Mr. Johnson asked the Sheriff's Department to assign one of its deputies to be available outside the Appraiser's office during the meeting. As it indeed turned out, when Mr. Van Deelen and Mr. Miles met at the appointed time, Mr. Johnson, who was close by Mr. Miles's office, perceived the tone to grow increasingly loud and disruptive. Eventually, Mr. Johnson decided to interrupt and terminate the meeting, and did so with the assistance of Sergeant Kenneth Fangohr, the member of the Sheriff's Department assigned to provide the requested security.

Mr. Van Deelen continued to dispute the County's tax assessments and, in February 2005, filed suit in federal court, naming as defendants Mr. Miles, Mr. Johnson, and the County, and alleging, among other things, unconstitutional property valuations and perjury by Mr. Miles in his testimony at administrative hearings. Not long after in March 2005, the County reduced by $5,000 the assessed value of Mr. Van Deelen's home, and Mr. Van Deelen dismissed the suit.[2]

But this was hardly the end of the matter. Mr. Van Deelen pursued yet another tax appeal with the Appraiser's office in late March 2005, even after the resolution of his federal lawsuit. A meeting was scheduled, and Mr. Johnson

_____

[2] While Mr. Van Deelen claims the County reduced the assessment in response to his lawsuit, defendants contend that the reduction was a result of additional information provided to the Appraiser's office by Mr. Van Deelen.

again requested that someone from the Sheriff's office attend; this time, however, he asked the Sheriff's representative to sit inside, not outside, the meeting room. Because Sergeant Fangohr was unavailable that day, the job went to Deputy Dale Flory. While defendants submit that the deputy was present simply to ensure that the meeting did not get out of control, Mr. Van Deelen alleges that the deputy's attendance was calculated to intimidate him in retaliation for his lawsuits and appeals and to deter him from bringing future appeals.

Indeed, Mr. Van Deelen alleges that, upon his arrival at the meeting, Mr. Miles stated that "[t]oday you get payback for suing us." Mr. Van Deelen further alleges that Deputy Flory pulled his chair right next to Mr. Van Deelen, deliberately "bumping" Mr. Van Deelen's arm and leg with his own in the process. Mr. Van Deelen asserts that the deputy's presence surprised and frightened him. When he asked why the deputy was there, Mr. Miles responded that Deputy Flory had come at the request of Mr. Johnson based upon plaintiff's prior behavior. Mr. Van Deelen alleges that Deputy Flory repeatedly and intentionally "bumped" him throughout the meeting, and that when Mr. Van Deelen looked up, Deputy Flory held his hand on his gun and made menacing looks. Mr. Van Deelen also alleges that Mr. Miles "brow beat" him throughout the meeting by scowling and staring. After "an exchange of words," including threats by Mr. Van Deelen to file another lawsuit, Mr. Miles ended the meeting. Mr. Van Deelen contends that Deputy Flory then stood up and told him to leave.

During this exchange, Deputy Flory also allegedly poked Mr. Van Deelen's chest with his finger and stated: "Don't come back. Johnson and Miles are mad because you sued them. They told me to do whatever necessary to put a scare into you. If you show up for another tax appeal hearing, I might have to shoot you." Deputy Flory then told Mr. Van Deelen to leave immediately, not allowing him to collect his tax papers.

Mr. Van Deelen claims this episode has deterred him from his continued pursuit of tax appeals at the Appraiser's office.[3] As evidence, he presents a letter he sent to the Kansas Board of Tax Appeals in November 2005, cancelling his requested hearing and citing the threat of violence by the County as the reason for doing so. Seeking compensation for his alleged injuries, as well as injunctive and declaratory relief, Mr. Van Deelen brought suit in federal district court against Mr. Johnson, Mr. Miles, Deputy Flory, Sergeant Fangohr, Sheriff Ken McGovern, and the County Board of Commissioners. Mr. Van Deelen's suit alleges various violations of the First and Fourteenth Amendments, actionable by means of 42 U.S.C. § 1983, as well as various violations of state tort law.

B

In due course, the district court entertained and granted defendants' motion for summary judgment with respect to all of Mr. Van Deelen's federal

---

[3] Mr. Van Deelen does not contest, however, that he has gone back to the courthouse for other non-tax-related business.

constitutional claims. With respect to his First Amendment claims, the district court held, *inter alia*, that Mr. Van Deelen's pursuit of legal and administrative remedies against the County relating to his tax assessments failed to qualify as protected constitutional conduct because it did not implicate matters of public concern and instead "aimed only at advancing [his] financial interest and achieving only redress for [his] private grievances." Dist. Ct. Op. 12. The district court also disposed of Mr. Van Deelen's Fourteenth Amendment claims, finding a lack of evidence of any substantive or procedural due process violation and no basis for asserting a violation of equal protection; it similarly found no merit to Mr. Van Deelen's invasion of privacy and § 1983 conspiracy claims. Having thus extinguished his federal claims, the court dismissed without prejudice Mr. Van Deelen's remaining pendent state law claims pursuant to 28 U.S.C. § 1367(c).

Mr. Van Deelen filed a timely notice of appeal seeking reversal of the district court's disposition on all but two matters: he does not challenge the court's dismissal of the equal protection and invasion of privacy claims. Mr. Van Deelen further conceded at oral argument that his appeal on First Amendment grounds pertains only to Mr. Miles, Mr. Johnson, and Deputy Flory, and that he does not appeal the district court's conclusion that he lacks evidence of retaliatory conduct by Sergeant Fangohr or Sheriff McGovern. Our primary and initial focus in this case, thus, concerns Mr. Van Deelen's claim that Mr. Miles, Mr. Johnson,

and Deputy Flory unlawfully retaliated against him for engaging in protected First Amendment petitioning activity.

II

The promise of self-government depends on the liberty of citizens to petition the government for the redress of their grievances. When public officials feel free to wield the powers of their office as weapons against those who question their decisions, they do damage not merely to the citizen in their sights but also to the First Amendment liberties and the promise of equal treatment essential to the continuity of our democratic enterprise. "The very idea of a government, republican in form, implies a right on the part of its citizens . . . to petition for a redress of grievances." *United States v. Cruikshank*, 92 U.S. 542, 552 (1875); *see also United Mine Workers v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967) (The right to petition is "among the most precious of the liberties safeguarded by the Bill of Rights.").

To make out a claim of unlawful retaliation by government officials in response to the exercise of his or her First Amendment right to petition, we have indicated three elements must be present. The plaintiff must show that (a) he or she was engaged in constitutionally protected activity; (b) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (c) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise

of constitutionally protected conduct. *See Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). We address each element in turn.

A

The defendants argue vigorously that Mr. Van Deelen's lawsuits and administrative appeals do not amount to "constitutionally protected activity" and thus fail the first prong of the *Worrell* test. This is so, defendants submit, because Mr. Van Deelen's activity involved only private tax disputes and not issues of "public concern." We cannot agree.

One might well (as defendants do) question the merits of Mr. Van Deelen's petitions or their significance, arising as they do from an ongoing and increasingly personal spat with County tax officials. But a private citizen exercises a constitutionally protected First Amendment right *anytime* he or she petitions the government for redress; the petitioning clause of the First Amendment does not pick and choose its causes. The minor and questionable, along with the mighty and consequential, are all embraced. This is, of course, not to say that the "public concern" test proffered by defendants and adopted by the district court has no place in the law of the First Amendment. Rather, the test quite properly applies to claims brought by government employees – but its scope reaches no further.

Because of the government's need to maintain an efficient workplace in aid of the public's business, the Supreme Court has long recognized that "the State

has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Accordingly, the Court has held, the government may in some instances employ constraints on the speech and activities of employees that would be unconstitutional if applied to private citizens.[4] Still, even in the public workplace context, the Supreme Court has sought to balance the employees' rights as citizens with the government's interests as employer; because expression relating to issues of public concern "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection," *Connick v. Myers*, 461 U.S. 138, 145 (1983) (internal quotation marks omitted), speech affecting such matters remains protected even for government employees.[5]

---

[4] *See, e.g.*, *Garcetti v. Ceballos*, 126 S. Ct. 1951, 1958 (2006) ("Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services."); *Connick v. Myers*, 461 U.S. 138, 146 (1983) ("[G]overnment officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment."); *Waters v. Churchill*, 511 U.S. 661, 672 (1994); *City of San Diego v. Roe*, 543 U.S. 77, 80-84 (2004).

[5] The Supreme Court has also recently indicated that, to merit First Amendment protection, a public employee's speech, though related to matters of public concern, must not have been made pursuant to his or her official duties. *See Garcetti*, 126 S. Ct. at 1959-62; *see also Casey v. West Las Vegas Ind. Sch. Dist.*, 473 F.3d 1323, 1328 (10th Cir. 2007).

The public concern test, then, was meant to form a sphere of protected activity for public employees, not a constraining noose around the speech of private citizens. To apply the public concern test outside the public employment setting would require us to rend it from its animating rationale and original context. Admittedly, defendants point us to a considerable line of cases from the District of Kansas appearing to do just this.[6] But these holdings are neither compelled by nor consistent with the First Amendment. As we have explained, "it is the government's powers and responsibilities *as an employer* that warrant restrictions on speech," including the public concern requirement, "*that would not be justified in other contexts.*" *Worrell*, 219 F.3d at 1210 (emphases added). And as our sister circuits have put the point, "[t]he story of the public concern limitation is a story about the free speech of public employees," *Thaddeus-X v. Blatter*, 175 F.3d 378, 390 (6th Cir. 1999) (en banc), and any attempt to apply it to the broader context of speech by private citizens would quite mistakenly "curtail a significant body of free expression that has traditionally been fully

---

[6] *See Van Deelen v. Shawnee Mission Unified Sch. Dist. # 512*, 316 F. Supp. 2d 1052, 1058-59 (D. Kan. 2004); *Delkhah v. Moore*, 2006 WL 1320255, at *8-9 (D. Kan. May 15, 2006); *Howse v. Atkinson*, 2005 WL 1076527, at *6 (D. Kan. May 4, 2005). The district court also cited *McCook v. Springer Sch. Dist.*, 44 F. App'x. 896, 903-04 (10th Cir. 2002) (unpub.), an unpublished and nonbinding decision of this circuit that, while ambiguous, allowed a private plaintiff's First Amendment claim in part on the ground that at least some of the speech at issue involved matters of public concern. *See id.* at 904.

protected under the First Amendment," *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004).[7]

B

Under *Worrell*'s second requisite, Mr. Van Deelen must show that the defendants' actions caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." 219 F.3d at 1212. If accepted as credible by a jury, Mr. Van Deelen's allegations of physical and verbal intimidation, including a threat by a deputy sheriff to shoot him if he brought any more tax appeals, would surely suffice under our precedents to chill a person of ordinary firmness from continuing to seek redress for (allegedly) unfair property tax assessments. *See, e.g.*, *Perez v. Ellington*, 421 F.3d 1128, 1132 (10th Cir. 2005) (finding the rushed imposition of tax assessments and a delay in removing tax liens after their abatement sufficient to chill a person of ordinary firmness from continuing in constitutionally protected activity). Further, Mr. Van Deelen presented evidence of his actual injury; his deposition testimony and his letter to the Board of Tax Appeals suggest that defendants' actions did, in fact, deter him from further tax appeals. Of course, a jury is free to find Mr. Van

---

[7] *See also Campagna v. Mass. Dep't of Envtl. Prot.*, 334 F.3d 150, 154-55 (1st Cir. 2003); *Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000); *Eichenlaub*, 385 F.3d at 282-84; *Gable v. Lewis*, 201 F.3d 769, 771-72 (6th Cir. 2000); *Thaddeus-X*, 175 F.3d at 388-90; *Vickery v. Jones*, 100 F.3d 1334, 1346 n.1 (7th Cir. 1996); *cf. United States v. Reyes*, 87 F.3d 676, 680 (5th Cir. 1996); *Dossett v. First State Bank*, 399 F.3d 940, 950 (8th Cir. 2005).

Deelen's evidence unpersuasive or incredible, but that is the function of the fact finder, not this court, in our judicial system.

C

Finally, Mr. Van Deelen must show that defendants' "adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell*, 219 F.3d at 1212. In aid of this cause, Mr. Van Deelen points us to Mr. Miles's alleged statement, "Today you get payback for suing us," and Deputy Flory's alleged statement, "Johnson and Miles are mad because you sued them." Although defendants deny making these statements, and the jury is free to so find, we cannot dispute that a reasonable jury could infer from them an impermissible retaliatory motive. *See, e.g.*, *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990) (finding sufficient evidence of retaliatory motive from police detective's statement: "Payback is hell, that's what she got for hiring a smart-ass lawyer.").

III

Defendants suggest that, even if Mr. Van Deelen satisfies *Worrell*'s tripartite test and might otherwise have a triable retaliation claim for interference with his right to petition, they are entitled to qualified immunity. When a defendant asserts qualified immunity, the responsibility shifts to the plaintiff to meet the burden of demonstrating first, that the defendant's actions, viewed here through the prism of our summary judgment standard and thus examined in the

light most favorable to the plaintiff, violated a constitutional or statutory right; and, second, that the right at issue was clearly established at the time of the defendant's allegedly unlawful conduct. *Casey v. West Las Vegas Ind. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007); *Phillips v. James*, 422 F.3d 1075, 1080 (10th Cir. 2005). If the plaintiff fails to satisfy either part of this two-part test, we grant qualified immunity. *Casey*, 473 F.3d at 1327.[8]

We believe Mr. Van Deelen has overcome both qualified immunity hurdles. As we have already indicated, Mr. Van Deelen has alleged facts from which a reasonable jury could (though need not necessarily) conclude that a violation of the First Amendment took place. And the right at issue – to petition the government for the redress of tax grievances – has been with us and clearly established since the Sons of Liberty visited Griffin's Wharf in Boston. Defendants respond by pointing us again to the line of cases from Kansas district courts, *see supra* note 6, arguing that it "muddied the water" sufficiently that a reasonable official would not have known that private citizens have a First Amendment right to petition on private as well as public matters. But every case discussing the public concern test in the Supreme Court has made pellucid that it

___

[8] Even where the law is clearly established, a defendant may still be entitled to qualified immunity by claiming extraordinary circumstances, such as reliance on a state statute or regulation or the advice of legal counsel, and proving that he neither knew nor should have known the relevant legal standard. *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 842 (10th Cir. 2005). Defendants here, however, make no such claim of extraordinary circumstances, but instead simply assert that the law was not clearly established.

applies only to public employees. *See, e.g.*, *Connick*, 461 U.S. at 143-49; *Waters*, 511 U.S. at 671-82; *City of San Diego*, 543 U.S. at 80-84; *Garcetti*, 126 S. Ct. at 1957-62. The same is true of our own precedent. *See*, *e.g.*, *Martin v. City of Del City*, 179 F.3d 882, 886 (10th Cir. 1999) (explicitly stating six times within a single page that the public concern test applies specifically to claims by public employees); *Schalk v. Gallemore*, 906 F.2d 491, 494-95 (10th Cir. 1990); *Burns v. Bd. of County Comm'rs*, 330 F.3d 1275, 1285-86 (10th Cir. 2003). And none of our published opinions concerning the right of petition by private citizens has even hinted at a public concern requirement. *See, e.g.*, *Beedle v. Wilson*, 422 F.3d 1059, 1065-67 (10th Cir. 2005); *Malik v. Arapahoe County Dep't of Soc. Servs.*, 191 F.3d 1306, 1315 (10th Cir. 1999); *DeLoach*, 922 F.2d at 620; *Penrod v. Zavares*, 94 F.3d 1399, 1404-06 (10th Cir. 1996). The same is true of our sister circuits. *See supra* pp. 11-12 and note 7. Reliance on district court and unpublished decisions in the face of such uniform governing authority from the Supreme Court, as well as this circuit and every other circuit to have addressed the question, is not sufficient to avoid liability.

Put simply, and taking as true Mr. Van Deelen's version of the facts as we must, we hold (unremarkably, we think) that a reasonable government official should have clearly understood at the time of the events at issue that physical and verbal intimidation intended to deter a citizen from pursuing a private tax

complaint violates that citizen's First Amendment right to petition for the redress of grievances.

IV

In addition to his petitioning claim, Mr. Van Deelen alleges a number of other First Amendment violations, including that defendants infringed his rights of speech, assembly (by denying him access to the county courthouse for the purpose of pursuing tax appeals), and association (by denying him access to courthouse employees). The district court viewed all such claims as "merely restat[ing]" Mr. Van Deelen's claim for interference with his right to petition and dismissed them because they, too, did not relate to matters of public concern. As we have indicated, however, the public concern test enjoys no place in the analysis of a private citizen's First Amendment claims. Accordingly, we reverse the district court's summary judgment on these counts as well. But, acknowledging that they were only briefly developed before us in a *pro se* brief, and that proper but as-yet unanalyzed grounds for summary judgment or qualified immunity may exist, we believe the prudent course is to ask the district court to conduct such examinations in the first instance on remand.

Beyond his First Amendment claims, Mr. Van Deelen also appeals the district court's summary judgment on his claims of conspiracy and violations of due process, as well as his claim against the County for adopting a policy or custom that caused him to be deprived of his federal rights. We have

independently reviewed these claims and can report them to be without merit and thus properly dismissed by the district court. However, because we have renewed the original basis for supplemental jurisdiction by reviving and remanding Mr. Van Deelen's First Amendment claims, we vacate the district court's dismissal of his state tort claims and reinstate them to this suit. *See Anaya v. Crossroads Managed Care Sys., Inc.,* 195 F.3d 584, 590 n.1 (10th Cir. 1999).[9]

* * *

To summarize, because the right of a private citizen to seek the redress of grievances is not limited to matters of "public concern," we reverse the district court's grant of summary judgment with respect to defendants Mr. Miles, Mr. Johnson, and Deputy Flory on Mr. Van Deelen's claim for interfering with his First Amendment right to petition and remand that matter for trial. With respect to these same defendants and Mr. Van Deelen's remaining First Amendment claims, we reverse and remand for the further proceedings we have outlined. We affirm the district court's grant of summary judgment on plaintiffs' various First Amendment claims as against defendants Sergeant Fangohr, Sheriff McGovern,

---

[9] Separately, appellees argue that Mr. Van Deelen's *pro se* brief suffers from "substantial deficiencies" sufficient to warrant summary dismissal of this appeal under *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836 (10th Cir. 2005). Though perhaps no model of appellate argument, Mr. Van Deelen's *pro se* brief suffers from far fewer deficiencies than appellees contend, and, happily, it does not come close to sinking to the low blows of the brief at issue in *Garrett*, which did "little more than attempt to impugn (without basis) the integrity of the district judge." *Id.* at 841.

and the County.  We also affirm the district court's grant of summary judgment to all defendants with respect to Mr. Van Deelen's claims of conspiracy and violations of due process.  Finally, we vacate the district court's dismissal of Mr. Van Deelen's state law claims.

*So ordered.*