**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 15, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHNNY LOCUST,

      Petitioner-Appellant,

v.

DAVID PARKER, Warden,

      Respondent-Appellee.

No. 10-5121
(D.C. No. 4:07-CV-00161-CVE-TLW)
(N.D. of Okla.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **HARTZ, BRORBY**, and **TYMKOVICH**, Circuit Judges.[**]

Johnny Locust, an Oklahoma state prisoner proceeding pro se,[1] seeks a certificate of appealability (COA) to challenge the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Having jurisdiction

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

[1] Because Locust is proceeding pro se, we construe his filings liberally. *See Van Deelan v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

pursuant to 28 U.S.C. § 1291, we deny his request for a COA and affirm the district court's decision.

## I. Background

Locust's conviction arose out of events occurring in the early hours of March 2, 2004. Police responded to a dispatch and found Joseph Chamberlain outside of his house, holding Locust down in the street. According to Chamberlain and his family members, three children had been sleeping in an upstairs bedroom. Chamberlain's granddaughter, R.B., woke to find a man grabbing her shoulder and pulling her. Chamberlain and the other adults in the house were awakened by the screams of the children. When Chamberlain entered the children's room, he found Locust on all fours next to the bed where they were sleeping. Chamberlain then dragged Locust down the stairs and out of the house.

The police arrested Locust for public intoxication, but he was later charged with first degree burglary and failure to register as a sex offender. On Locust's motion, the second charge was severed from trial. About a month after the arrest, Locust wrote a letter to the Chamberlain family apologizing and asking for forgiveness.

At trial for the first degree burglary charge, Locust testified he had been drinking at a nearby bar with Chamberlain's stepdaughter. He claimed she invited him to Chamberlain's apartment. Locust denied ever having been in the children's bedroom and accused R.B. and her family of lying. A detective for the

-2-

Tulsa Police Department testified that after the arrest Locust stated that he had been drinking at the bar with Chamberlain and that Chamberlain had invited him to the house. Both Chamberlain and his stepdaughter testified they were not at the bar that night and did not spend the evening with Locust. Following trial, the jury convicted Locust of First Degree Burglary. He was sentenced to twenty years' imprisonment and a fine of $5,000.

Locust appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA) on the following grounds: (1) improper jury instructions, (2) insufficient evidence of guilt, (3) ineffective assistance of counsel, and (4) cumulative error resulting in a deprivation of due process. The OCCA found the trial court erred in failing to instruct the jury on the defense of consent to enter the premises, but held the error to be harmless. The court concluded the remaining claims lacked merit. However, the OCCA sua sponte modified Locust's sentence to fifteen years after finding that the trial court committed plain error in failing to instruct the jury that Locust would be required to serve 85% of his sentence before being eligible for parole. The court also denied Locust's motion for an evidentiary hearing with regard to his claim for ineffective assistance of counsel.

Locust subsequently filed a habeas petition in federal district court raising the same four issues he brought before the OCCA. He also sought an evidentiary hearing. In a carefully reasoned and thorough opinion, the district court denied Locust's petition and his request for a hearing.

Locust now seeks a COA from this court to enable him to appeal the denial of his habeas petition. He renews two of the claims he made before the district court. First, he contends the trial court's failure to instruct the jury on the defense of consent was reversible error. Second, he asserts he received ineffective assistance of counsel at trial. He also argues the district court erred in denying his request for an evidentiary hearing.

## II. Discussion

Without a COA, we lack jurisdiction to consider the merits of a habeas appeal. 28 U.S.C. § 2253(c)(1)(A). We may issue a COA only if "the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To make the requisite showing, Locust must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotations omitted).

Because the OCCA addressed the merits of Locust's claims, "[the Anti-Terrorism and Effective Death Penalty Act (AEDPA)]'s deferential treatment of state court decisions must be incorporated into our consideration of [his] request for [a] COA." *Dockins v. Hines,* 374 F.3d 935, 938 (10th Cir. 2004). Under AEDPA, we may grant a habeas petition on a claim that was adjudicated on the merits in state court only if the state court's decision "was contrary to, or

-4-

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

Having thoroughly reviewed the record, we conclude Locust is not entitled to habeas relief for substantially the same reasons discussed by the district court.

### A) Improper Jury Instruction

Locust renews his claim that the trial court erred in failing to instruct the jury on the defense of consensual entry. The OCCA agreed this failure amounted to plain error of state law, but concluded the error was harmless.

In raising this claim on collateral review, Locust faces a heavy burden of proof. "Habeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense." *Brinlee v. Crisp,* 608 F.2d 839, 854 (10th Cir. 1979). In addition, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe,* 431 U.S. 145, 155 (1977).

If the trial court committed constitutional error, we must consider whether the error is harmless under the standard articulated in *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). *California v. Roy*, 519 U.S. 2, 5–6 (1996). That is, an

error is harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 638. "[A]n error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* at 634 (quotation omitted).

We agree with the district court that even if the trial court's failure to give the instruction on consensual entry did rise to the level of constitutional error, it did not have a substantial and injurious effect on the jury's verdict. As the district court noted, the trial court's instructions to the jury on first degree burglary included the elements of "breaking" and "entering" and a definition of criminal intent. If the jury had credited Locust's testimony that he was invited into the house, it could not have found these elements were met. Because the jury found Locust broke into the house with criminal intent, it must have concluded beyond a reasonable doubt that Locust did not receive consent to enter. Thus, even if the jury had received the instruction on the defense of consensual entry, the outcome would have been the same.

### B) Ineffective Assistance of Counsel

To prevail on a claim for ineffective assistance of counsel, Locust must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). A petitioner demonstrates deficient performance by showing counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688.

-6-

To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Locust contends his trial counsel provided ineffective assistance by failing to request a jury instruction on consensual entry, investigate potentially corroborating witnesses, call the arresting police officer as a defense witness, and investigate Locust's competence to stand trial.

(1)  The OCCA found the trial counsel was deficient in failing to request the uniform instruction on the defense of consensual entry.  The court concluded, however, that Locust did not show he was prejudiced by this deficiency.  We agree.  Because the jury must have found Locust was not invited into the house in order to find the elements of first degree burglary, we hold there is not a reasonable probability that, but for the error, Locust would have been acquitted.

(2)  Locust's claim that his counsel was ineffective in failing to investigate a potentially corroborating witness is similarly unpersuasive.  Locust asserts an acquaintance was at the bar on the night in question and could have testified that Locust and Chamberlain's stepdaughter were there together.  Even if failure to investigate the acquaintance can be considered deficient performance, Locust cannot show he suffered prejudice from this failure.  Locust does not claim the acquaintance had knowledge of whether he was invited to the Chamberlain house or what occurred after he left the bar.

(3) Third, Locust contends his counsel was ineffective in failing to call Kevin Staats, the arresting officer, as a witness at trial. In support, Locust offers an affidavit from Staats stating he did not initially charge Locust with burglary because he saw no evidence of a break-in at the Chamberlain apartment and because he had the "idea" that someone might have let Locust into the house. R., Vol. 1, 251. But the government's theory at trial was that Locust entered the house through a closed but unlocked door without permission from the occupants—a theory that was sufficient to satisfy the "breaking" element of first degree burglary. Thus, Staats's evidence that there was no sign of forced entry would not have changed the result of the trial. His "idea" that Locust had been invited into the house is more relevant. But there is not a reasonable probability that Staats's general impression would have led the jury to acquit Locust. This is especially true given that Staats's impression seems to have been based in part on the evidence that Locust did not use force to enter the house.

(4) Finally, Locust claims trial counsel provided ineffective assistance in failing to investigate his competency to stand trial. The district court dismissed this claim, holding Locust had not shown a likelihood that such an investigation would have led to a judicial finding of incompetence. We agree. The record shows Locust testified lucidly on his own behalf at trial. Although Locust claims to have a mental disability, this does not necessarily mean that he is incompetent. *See Ake v. State*, 778 P.2d 460, 464 (Okla. Crim. App. 1989) (finding the

defendant competent despite the fact that he suffered from schizophrenia). Because there is nothing in the record to suggest Locust did not have sufficient ability to consult with his lawyer or a rational understanding of the proceeding against him, we find there was no prejudice from the alleged deficiency. *See id.*

In sum, we agree with the district court Locust has not shown the OCCA's rejection of his ineffective assistance claim was an unreasonable application of federal law.

### C) Evidentiary Hearing

Locust argues the district court should have granted his request for an evidentiary hearing before deciding several of the issues in his petition. Specifically, Locust seeks an evidentiary hearing to show the prejudicial effect of the trial court's failure to give a consensual defense instruction and his trial counsel's allegedly deficient performance.

We review a district court's decision to grant or deny an evidentiary hearing in a habeas proceeding for abuse of discretion. *Vigil v. Zavaras*, 298 F.3d 935, 943 (10th Cir. 2002). "An abuse of discretion occurs when the district court bases its ruling on an erroneous conclusion of law or relies on clearly erroneous fact findings," *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1165 (10th Cir. 1998), or when the court's decision is "arbitrary, capricious, or whimsical," *Cox v. Sandia Corp.*, 941 F.2d 1124, 1125 (10th Cir. 1991).

AEDPA provides that "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim" unless the applicant shows "the claim relies on a new rule of constitutional law" or "a factual predicate that could not have been previously discovered through the exercise of due diligence." § 2254(e)(2)(A). To develop the factual basis of a claim, "the prisoner, at a minimum, [must] seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams v. Taylor*, 529 U.S. 420, 437 (2000).

If the prisoner has developed a claim, a hearing is appropriate where the allegations, "if true, would entitle [the prisoner] to federal habeas relief." *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007). Consistent with this standard, "an evidentiary hearing is unnecessary if the claim can be resolved on the record." *Anderson v. Att'y Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005).

Locust did not request an evidentiary hearing in state court to investigate his claims of improper jury instructions or ineffective assistance based on failure to request the correct instruction, to interview his acquaintance, or to investigate Locust's competence. Because Locust has not presented this court with evidence that the factual predicates for these claims could not have been discovered through due diligence or that the claims are based on a new rule of constitutional law, we hold the district court's denial was not an abuse of discretion.

But Locust did seek an evidentiary hearing from the OCCA with regard to his claim of ineffective assistance for failure to call Staats at trial. The OCCA summarily denied the motion for a hearing, but allowed Locust to supplement the record with a police report and an affidavit authored by Staats. As set out above, we are able to resolve the claim for ineffective assistance on the record as supplemented by Staats's report and affidavit. For this reason, an evidentiary hearing on this claim is not warranted. *See Torres v. Mullin*, 317 F.3d 1145, 1161 (10th Cir. 2003).

### III.  Conclusion

For the reasons stated above, we DENY Locust's request for a COA and DISMISS the matter. We also DENY his request for an evidentiary hearing.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge