**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 8, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DARRELL MORRIS,

     Plaintiff - Appellant,

v.

MARY FALLIN, Governor; MICHAEL
W. ROACH, OK Board of Corrections;
FRAZIER HENKE, OK Board of
Corrections; JOHN T. HOLDER, OK
Board of Corrections; KEVIN J. GROSS,
OK Board of Corrections; GENE
HAYNES, OK Board of Corrections;
ADAM LUCK, OK Board of Corrections;
IRMA J. NEWBORN, OK Board of
Corrections; ROBERT PATTON, OK Dept
of Corr Directors; JOE ALLBAUGH, OK
Dept of Corr Directors; JOEL MCCURDY,
Dr., OK Dept of Corr Chief Medical
Officers; WILLIAM COOPER, Dr., OK
Dept of Corr Chief Medical Officers;
BUDDY HONAKER, OK Dept of Corr
MSA's; GENESE MCCOY, OK Dept of
Corr MSA's; WARDEN DAVID
PARKER, D-III Deputy Director; JIM
FARRIS, L.A.R.C. Warden; TAMARA
HILL, L.A.R.C. Warden; LADONNA
WARRIOR, RHSA; KENT KING, Dr.,
RHSA; ROBERT BALOGH, Dr., RHSA;
BILLIE NYE, L.P.N. RHSA; JANET
DOWLING, DCCC Warden; TAMMY
CARTWRIGHT, DCCC Warden; JODY
JONES, Warden's Asst; LARRY
BOWLER, Dr., CHSA; BETHANY
WAGENER, PA-C, CHSA; DIANA
COLLINS, Library Supervisor;
TERRANCE BOLT, Library Supervisor;
DANIEL OWENS, C.M.S.; LISA

No. 18-6213
(D.C. No. 5:16-CV-01297-D)
(W.D. Okla.)

SMILEY, A/C C.M.; JOHN DOE, A/C
C.M, ODOC Population Coordinator,
C.C.F et. al,

     Defendants - Appellees.

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

---

Darrell Morris brought this pro se prisoner suit, alleging various claims stemming from the denial of medical treatment. The district court dismissed most of the claims at screening and later entered summary judgment on the rest based on lack of exhaustion, qualified immunity, and failure to comply with state-law procedural requirements. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I

Mr. Morris is an Oklahoma inmate who suffers from chronic pain, neuropathy, and degenerative problems in his hips, legs, and back. According to the amended complaint, prison staff treated his symptoms with a specific medication, Gabapentin, until he was transferred to the Lexington Assessment and Reception Center (Lexington), where this medication was discontinued. Defendants Nye, Balogh, and

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

King were medical providers at Lexington. After unsuccessfully challenging the denial of Gabapentin through Lexington's prison grievance process, Mr. Morris was transferred to another facility, the Dick Connor Correctional Center (DCCC).

Upon transfer to DCCC, Mr. Morris still was not prescribed Gabapentin, nor was he allowed to use a wheelchair, an egg-crate mattress, or a foam-wedge pillow, all of which he was previously permitted to use. Defendants Bowler and Wagener were medical providers at DCCC. Although Mr. Morris met with Wagener for a sick-call, he alleges she terminated the sick-call prematurely. As before, Mr. Morris used the prison grievance process to contest Wagener's termination of the sick-call, as well as the denial of his medical items and the Gabapentin, but he was dissatisfied with the results of those efforts, which eventually led the Oklahoma Department of Corrections (ODOC) Medical Services Administrator, Defendant McCoy, to impose grievance restrictions.

Based on these events, Mr. Morris filed an amended complaint against twenty-three defendants, claiming "Deliberate Indifference to Medical Needs," retaliation, discrimination, conspiracy, "Obstruction of Due Process," "Unequal Protection of the Law," "Grievance Process Unconstitutional," fraud, and extortion. R., Vol. 1 at 29. On initial screening, the district court adopted a magistrate judge's comprehensive report and recommendation that detailed why most of the claims should be dismissed. The remaining claims against Defendants Nye, Balogh, King, Bowler, Wagener, and McCoy proceeded to summary judgment. Thereafter, the magistrate judge entered three separate reports recommending that, with one

3

exception, summary judgment be entered on these claims based on lack of exhaustion or qualified immunity. The lone exception was a state-law claim against McCoy, who the magistrate judge determined was entitled to summary judgment due to Mr. Morris's failure to comply with state-law procedural requirements. The district court adopted each report and recommendation and entered judgment accordingly.

II

*A. Briefing Deficiencies*

At the outset, we note that Mr. Morris offers several poorly developed arguments challenging the district court's initial screening order. Although pro se materials are entitled to a solicitous construction, *Van Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007), we have "repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants," *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation marks omitted). "Under [Fed. R. App. P.] 28, which applies equally to pro se litigants, a brief must contain more than a generalized assertion of error, with citations to supporting authority." *Id.* at 841 (ellipsis and internal quotation marks omitted). Among other things, "[a]n appellant's opening brief must identify 'appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'" *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (quoting Fed. R. App. P. 28(a)(8)(A)). "When a pro se litigant fails to comply with [this] rule, we cannot fill the void by crafting arguments

4

and performing the necessary legal research" for him. *Garrett*, 425 F.3d at 841 (brackets and internal quotation marks omitted).

Mr. Morris fails to adequately challenge the district court's dismissal of his claims in its initial screening order. He acknowledges his "legal work is lacking and unorthodox," Aplt. Opening Br. at 15, and indeed, he fails to explain why the court erred in dismissing several causes of action. For example, he disputes the dismissal of his fraud claims, asserting "Appellees refused to include in the court ordered special report" some 280 exhibits that he provided to the court. *See id.* But rather than explain why this alleged omission demonstrates error, he merely references the objections he made in the district court. We have consistently held that incorporating arguments by reference to previously filed pleadings is inadequate to preserve appellate review. *See, e.g., United States v. Gordon*, 710 F.3d 1124, 1137 n.15 (10th Cir. 2013) ("[T]his court is under no obligation to consider arguments not fully set forth in a party's appellate brief, including arguments incorporated by reference to prior pleadings or other materials." (internal quotation marks omitted)). Because Mr. Morris only incorporates his previous arguments, we decline to consider the district court's initial screening order that dismissed most of his claims.[1]

---

[1] Mr. Morris also makes passing references to the district court's denial of his motion for counsel and motion to file a second "supplemental complaint." Aplt. Opening Br. at 16, 18. Even if he preserved these arguments, however, he identifies nothing to suggest the court abused its discretion, either in denying his request for counsel, *see Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995), or in denying leave to file a second amended complaint, *see Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010).

## B. *Firm Waiver Rule*

Apart from his briefing deficiencies, Mr. Morris attempts to advance a claim barred by our firm waiver rule. The amended complaint alleged McCoy engaged in extortion under state law by imposing arbitrary grievance restrictions that required him to pay money to file grievances. The magistrate judge recommended that summary judgment be granted to McCoy because Mr. Morris failed to show he complied with the procedural requirements of Oklahoma's Governmental Tort Claims Act, *see* Okla. Stat. tit. 51 § 156(A)-(C) (requiring that notice of claim be filed with the Office of Risk Management Administrator within one year of loss). Although Mr. Morris attempts to pursue this claim on appeal, he failed to object to the magistrate judge's recommendation, and the district court determined he waived further review under our firm waiver rule. We agree.

"Under this court's firm waiver rule, the failure to timely object to a magistrate judge's finding and recommendations waives appellate review of both factual and legal questions." *Klein v. Harper*, 777 F.3d 1144, 1147 (10th Cir. 2015) (internal quotation marks omitted). "This rule does not apply, however, when (1) a pro se litigant has not been informed of the time period for objecting and the consequences of failing to object, or when (2) the interests of justice require review." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005) (italics and internal quotation marks omitted).

The first exception does not apply because the magistrate judge advised Mr. Morris of the time for objecting and the consequences of failing to do so. *See* R.,

6

Vol. 4 at 255. As for the second, interests-of-justice exception, we consider "[1] a *pro se* litigant's effort to comply, [2] the force and plausibility of the explanation for his failure to comply, and [3] the importance of the issues raised." *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010) (italics and internal quotation marks omitted). Mr. Morris does not address these factors, and we therefore affirm the disposition of this claim.

### C. Exhaustion

We turn, then, to those claims the district court determined Mr. Morris failed to exhaust. We review the district court's decision de novo, viewing the "evidence in the light most favorable to the non-moving party." *Tuckel v. Grover*, 660 F.3d 1249, 1251 (10th Cir. 2011). "Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

"Under the Prisoner Litigation Reform Act ('PLRA'), a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "[A]n inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." *Little*, 607 F.3d at 1249. Substantial compliance will not suffice. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). However, "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to

7

avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little*, 607 F.3d at 1250.

ODOC's administrative grievance process has four steps. First, a prisoner must attempt to informally resolve the complaint by speaking with an appropriate staff member. *See* R., Vol. 2 at 180 (ODOC Policy OP-090124 § IV.A-B). Second, if the matter is not resolved informally, a prisoner must submit a "Request to Staff" (RTS) within seven days of the incident. *See id.* at 180-81 (ODOC § V.C.3). Third, if the matter remains unresolved, a prisoner must then file an "Offender Grievance Form" (grievance) with the Reviewing Authority. *See id.* at 182 (ODOC § IV.A). And last, if the prisoner is dissatisfied with the Reviewing Authority's decision, he may appeal to the Administrative Reviewing Authority (ARA). *See id.* at 186 (ODOC § VII.B). "The ruling of the ARA is final and will conclude the internal administrative process available to the offender . . . ." *Id.* at 188 (ODOC § VII.D.1).

The district court determined Mr. Morris failed to exhaust three sets of claims: 1) his claims against Defendants Nye, Balogh, and King for the denial of Gabapentin at Lexington; 2) his claims against Defendants Bowler and Wagener for denying him Gabapentin at DCCC; and 3) his claims against Bowler and Wagener for denying him the use of a wheelchair at DCCC. We consider these claims in turn.[2]

---

[2] The court also determined Mr. Morris failed to exhaust claims against Balogh for making false allegations and altering his medical records. Mr. Morris does not challenge that ruling, and we do not consider it.

*1. Denial of Gabapentin—Nye, Balogh, and King*

Mr. Morris claims Nye, Balogh, and King were deliberately indifferent to his serious medical needs by denying him Gabapentin upon transferring to Lexington. He alleges Nye, a nurse at Lexington, prevented him from seeing Dr. Joel McCurdy, who was responsible for prescribing him pain medication. He further alleges Balogh and King, who were both doctors at Lexington, discontinued the Gabapentin and misrepresented his medical conditions to justify their actions. Mr. Morris first raised his concerns in writing with prison officials on December 1, 2014, when he submitted RTS #2032. *See* R., Vol. 2 at 214. As we explain, however, Mr. Morris failed to properly exhaust his remedies once he received a response to this RTS; instead, he pursued a response and then, once he received it, took no further action on the substance of his complaint.

In RTS #2032, Mr. Morris wrote, "Dr. King and Dr. Balogh have dismantled years of trial and error that [my previous doctor] performed to get the Neuropathy in my legs manageable with 1800 mg Gabapentin. . . . Please allow me to visit with Dr. McCurdy to address my chronic pain and to get my medications corrected/changed." *Id.* Mr. Morris added that Nye had prevented him from seeing Dr. McCurdy, he refused to see King and Balogh because they were neglecting his pain, and Balogh had falsely accused him of being a drug addict. *See id.* at 215.

On January 2, 2015, having received no response to RTS #2032, Mr. Morris filed a grievance indicating he should have received an answer to his RTS within 30 days. Mr. Morris stated in a sworn affidavit that his grievance was returned

9

unanswered the same day. He therefore filed an appeal directly with the ARA on January 5, 2015, just before he was transferred to DCCC on January 8; on February 5, McCoy wrote back, stating she forwarded his RTS to the acting medical reviewing authority at DCCC and requested a response. By February 25, however, still having received no response, Mr. Morris submitted another RTS requesting a response to RTS #2032. On March 27, McCoy finally sent Mr. Morris a response to RTS #2032 from the acting medical reviewing authority at DCCC, Buddy Honaker. Honaker prepared a memo to Mr. Morris stating that Mr. Morris had been seen by Balogh, who was treating his conditions as Balogh determined to be medically necessary. Honaker further wrote that Balogh did "not support narcotics or increasing your [Gabapentin]" and that he met Mr. Morris on November 17, 2014, reviewed Mr. Morris's treatment plan, and addressed his pain. *Id.* at 218. Also, Honaker stated that Balogh was "doing [a] referral to Ortho to discuss treatment options from outside specialties." *Id.*

If Mr. Morris was dissatisfied with this response to RTS #2032, he was obliged to file a grievance with the reviewing authority. His failure to do so left these claims unexhausted. Mr. Morris disputes this conclusion by incorporating previously rejected arguments from his district court pleadings, *see* Aplt. Opening Br. at 4, but we decline to consider such arguments. He also says Honaker obstructed his efforts to exhaust, apparently by omitting a date and number code from the response, but Mr. Morris does not explain why this omission rendered the grievance process

10

unavailable, particularly where, without any response at all, he was able to submit a grievance, an ARA appeal, and an RTS seeking a response.

   2.   *Denial of Gabapentin—Bowler and Wagener*

Mr. Morris also claims Bowler and Wagener denied him Gabapentin when he was transferred to DCCC. On January 9, 2015, the day after he was transferred, Mr. Morris submitted an RTS stating, "My medication that was managing my neuropathy has been reduced by 2/3 and no other medication is being offered other than medications that have been tried and proven to be ineffective. I have seen [University of Oklahoma] pain management and OU orthopedics both recommended the Gabapentin." R., Vol. 2 at 220. On January 16, Mr. Morris's RTS was returned with the following disposition: "You have been seen by both providers and are receiving appropriate care." *Id.* Mr. Morris then filed grievance 15-03, requesting to be transferred to another facility, stating: "[O]ne of my medications that I have been taking for years has been discontinued and I am being refused any medications to manage my excruciating pain except for medications that have already been tried and proven ineffective. I met with Dr. Bowler upon arrival (1-8-15) and expressed my needs, . . . however[,] he wasn't willing to restore one of the medications (Gabapentin)." *Id.* at 222. On February 17, the reviewing authority returned his grievance stating, "Based on your classification and medical needs you[] are at a facility that can meet your security classification and medical needs. Relief Denied." *Id.* at 224.

11

At that point, Mr. Morris attempted to complete the grievance process, but his appeal to the ARA was returned unanswered because his grievance raised issues that were not included in his RTS and he failed to attach the RTS to his grievance. *See id.* at 230; *see also id.* at 182 (ODOC § V.A (stating inmates may challenge the denial of an RTS by submitting a grievance "along with the [RTS]," and "[o]nly one issue or incident is allowed per grievance")). Mr. Morris filed a second appeal of grievance 15-03 on March 30, but McCoy returned it unanswered because the grievance raised additional issues and he had only one opportunity to correct the defect. She therefore informed him that his opportunity to proceed with the grievance process was waived or forfeited. *See id.* at 232.

Undeterred, Mr. Morris submitted another RTS on May 11, complaining about the lack of treatment and requesting to be transferred to a facility that could meet his medical needs. The RTS was returned stating, "This has been previously addressed." *Id.* at 307. Morris then filed grievance 15-21, complaining that Bowler and Wagener refused to treat him and requesting to be transferred to a different facility. Again, however, the grievance was returned unanswered because Mr. Morris was on grievance restrictions and he failed to provide a required affidavit specifying the number, date, description, and disposition of each grievance he had submitted during the preceding 12 months. *See id.* at 312; *see also id.* at 190-91 (ODOC § IX.B.2.a).[3]

---

[3] Mr. Morris references a separate RTS and grievance 15-20, *see* Aplt. Opening Br. at 10, the latter of which was denied for the same reasons as grievance 15-21, *see* R., Vol. 295, 312. But he fails to explain how he exhausted grievance

12

Mr. Morris nevertheless proceeded with an appeal to the ARA, stating both providers refused to treat him and requesting to be transferred. McCoy returned the appeal unanswered because he failed to submit a grievance response or comply with the grievance restrictions. Mr. Morris re-submitted his appeal, but Honaker returned it unanswered for the same reasons and informed Mr. Morris that his repeated failure to correct the procedural defects waived or forfeited his right to proceed in the grievance process.

At that point, still undeterred, Mr. Morris attempted to exhaust a third time. He filed an RTS stating that Bowler was denying him Gabapentin, a wheelchair, a foam mattress, and a wedge; he also requested that prior recommendations for his treatment be followed. The RTS was denied, stating: "Dr. Bowler is your current physician—based upon his professional clinical judg[]ment there is no need to change your medication at this time." R., Vol. 1 at 192. Dissatisfied with this response, Mr. Morris filed grievance 15-29, insisting Bowler was refusing to restore his Gabapentin. The reviewing authority returned the grievance unanswered, however, because Mr. Morris failed to comply with his grievance restrictions and the issue had already been addressed by the ARA. Mr. Morris appealed to the ARA, but again, his appeal was returned unanswered because he failed to obtain a response to his grievance or to comply with his grievance restrictions. Mr. Morris nevertheless filed yet another appeal of grievance 15-29, but as before, the ARA returned this

15-20, relying instead on an improperly incorporated argument he apparently made in his summary judgment response. Once again, we decline to consider this argument.

13

appeal unanswered because he failed to obtain a response to his grievance and he had only one opportunity to correct errors. The ARA therefore informed him that his opportunity to proceed with the grievance process was waived or forfeited.

This chronology demonstrates that Mr. Morris failed to properly exhaust his claims. Although he asserts prison officials thwarted his efforts to exhaust by imposing "fraudulent" grievance restrictions, Aplt. Opening Br. at 10, we have rejected similar arguments, *see Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (rejecting contention that grievance process was unavailable because inmate was subjected to grievance restrictions and required to provide, among other things, a notarized affidavit). As explained in *Thomas*, "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules[]—rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* (ellipsis and internal quotation marks omitted). Mr. Morris "may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them." *Id.* (internal quotation marks omitted).

### 3. Denial of a Wheelchair—Bowler and Wagener

Mr. Morris also alleges that Bowler and Wagener denied him a wheelchair. Although he filed several RTS's complaining of his mobility troubles and seeking accommodations, he first specifically requested a wheelchair in an RTS dated March 16, 2015. *See* R., Vol. 1 at 109. The RTS was denied, stating: "This has been addressed previously." *Id.* He then filed grievance 15-13, reiterating his mobility

14

problems and requesting a wheelchair or a transfer to a facility better suited to accommodating his medical needs. *Id.*, Vol. 2 at 264. Apparently without receiving a response, Mr. Morris filed an appeal to the ARA, reiterating his mobility problems and requesting a wheelchair. He also attached a grievance-restriction affidavit. The appeal was returned unanswered, however, because he indicated he had not previously raised the same issues, but another RTS did, in fact, request accommodations due to his mobility problems. Mr. Morris filed a second appeal with the ARA, insisting his mobility problems were causing injury to his ankle and knee and requesting a wheelchair. McCoy denied the appeal because he previously requested accommodations, he failed to submit a grievance-restriction affidavit, and he failed to obtain a response to grievance 15-13. Mr. Morris then proceeded with a third appeal, this time repeating his request for a wheelchair and also disputing that he had previously raised the same issue in a prior RTS. The appeal was returned unanswered, noting it was his third appeal that was denied due to procedural errors and, as a consequence, Mr. Morris waived or forfeited his opportunity to proceed with the grievance process. *Id.* at 272.

Mr. Morris filed yet another unsuccessful RTS and, later, grievance 15-31, which was returned unanswered because he failed to provide a grievance-restriction affidavit and the issue had already been addressed. *See id.*, Vol. 4 at 74. Mr. Morris filed still another appeal to the ARA, which was returned unanswered because he failed to obtain a decision on his grievance, he failed to provide the required grievance-restriction affidavit, he had previously raised the same issue, and he raised

15

multiple other issues. Again, Mr. Morris filed another appeal, and again, the ARA returned it unanswered for the same reasons, although the ARA also informed him that his failure to correct the procedural errors resulted in his waiver or forfeiture of the grievance process. As before, this chronology confirms that Mr. Morris failed to properly exhaust his claims.

### D. Qualified Immunity

The district court determined Bowler and Wagener were entitled to qualified immunity on Mr. Morris's claims that they denied him an egg-crate mattress and a foam wedge, and that Wagener prematurely terminated his sick-call requests. "We review a grant of summary judgment on the basis of qualified immunity *de novo*." *Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005) (internal quotation marks omitted). "When a defendant moves for summary judgment on the basis of qualified immunity, the burden shifts to the plaintiff to demonstrate, on the facts alleged, that (1) the defendant violated her constitutional or statutory rights, and (2) the right was clearly established at the time of the alleged unlawful activity." *Castillo v. Day*, 790 F.3d 1013, 1019 (10th Cir. 2015). The district court ruled Mr. Morris's claims failed on the first prong because he failed to show a constitutional violation. We agree.

The Eighth Amendment prohibits prison officials' deliberate indifference to an inmate's serious medical needs. *See Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). A negligent diagnosis or course of treatment is insufficient to state an Eighth Amendment claim; rather, an inmate must show both harm that is objectively sufficiently serious and also that prison officials subjectively "knew he

16

faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Id.* (internal quotation marks omitted).

### 1. Egg-crate and Foam Wedge

Mr. Morris alleged the egg-crate mattress was for his orthopedic problems and the foam wedge was to help with acid reflux. He asserted Bowler and Wagener confiscated these items upon transfer to DCCC. However, even assuming without deciding that the denial of these items is objectively sufficiently serious, Mr. Morris fails to show Bowler and Wagener subjectively knew of and disregarded a substantial risk of harm. The record indicates they believed an egg-crate mattress and a foam wedge were not medically necessary. R., Vol. 2 at 238 ("Based upon the professional, cli[n]ical judg[]ment of the DCCC providers, Dr. L. Bowler and B. Wagener, PA-C[,] there is no current medical indication for a foam wedge or mattress."). While Mr. Morris disputes their professional judgment, the Eighth Amendment does not grant inmates the right to a particular course of treatment. *See Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) ("Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation."). And even if Bowler and Wagener were negligent in denying these items, their negligence alone would not suffice to establish a claim for deliberate indifference. *See Callahan*, 471 F.3d at 1159.

### 2. Termination of Sick-Calls

Mr. Morris also claimed Wagener prematurely terminated his sick-call appointments without addressing all of his medical needs. The magistrate judge

17

determined the evidence did not support a constitutional violation, citing a treatment note indicating that Wagener evaluated Mr. Morris's pain symptoms, discussed his treatment options, and implemented a treatment plan. *See* R., Vol. 4 at 193-94. The district court agreed. On appeal, Mr. Morris insists he exhausted this claim, and he incorporates several arguments he made in the district court. However, the district court did not grant summary judgment on this claim due to lack of exhaustion; the court concluded that he failed to show a constitutional violation. Moreover, we have already explained that we will not consider arguments improperly incorporated from district court pleadings. Under these circumstances, we affirm the district court's grant of summary judgment on this claim.

III

Accordingly, the judgment of the district court is affirmed. Mr. Morris's motion for oral argument is denied.

Entered for the Court

Carolyn B. McHugh
Circuit Judge