**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 8, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

GARY LITTLE,

      Plaintiff - Appellant,

      v.

JUSTIN JONES, DOC Director; DEBBIE
MORTON, DOC Director's Designee;
GREG PROVINCE, MACC Warden;
ANITA TRAMMELL, MACC Deputy
Warden; BOB BIBERSTINE, MACC
Chaplain; DONNA VISOTSKI; REGINA
HICKS; CECIL GIBBONS; MS. WYSE,
MACC Food Supervisors,

      Defendants - Appellees.

No. 08-7095

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D. Ct. No. 6:07-CIV-00177-RAW-SPS)**

---

Jessica E. Yates, Snell & Wilmer, LLP, Denver, Colorado, appearing for
Appellant.

Jill Tsiakilos, Assistant Attorney General, Oklahoma Attorney General's Office,
Litigation Section, Oklahoma City, Oklahoma, appearing for Appellees.

---

Before **TACHA**, **KELLY**, and **HARTZ**, Circuit Judges.

---

**TACHA**, Circuit Judge.

Gary Little, an Oklahoma state prisoner, brought suit under 42 U.S.C. § 1983 alleging the Oklahoma Department of Corrections ("ODOC") and several employees and officials at the Mack Alford Correctional Center (collectively "defendants"), violated his constitutional rights. Upon defendants' motion, the district court dismissed Mr. Little's complaint for failure to exhaust administrative remedies and denied his motion for a preliminary injunction. We have jurisdiction under 28 U.S.C. § 1291 and AFFIRM in part, REVERSE in part, and REMAND.

## I. BACKGROUND

Mr. Little entered the custody of the ODOC in June 2004 to serve a ten-year sentence for assault and battery. Since his incarceration, the ODOC has transferred Mr. Little between Oklahoma correctional facilities at least fourteen times. From March 26, 2007, through July 25, 2007, Mr. Little was incarcerated at the Mack Alford Correctional Center ("MACC") in Stringtown, Oklahoma.

While at MACC, Mr. Little requested a vegan diet, which consists of plant foods only and does not include any animal byproducts, including eggs or milk. He maintained that the diet was a part of his religious practices as a Seventh Day Adventist. Initially, Donna Visotski, a food supervisor at MACC, agreed with Mr. Little's request and began providing him with his desired diet. During this time, Mr. Little also began working with MACC Chaplain Bob Biberstine to set

up a diet and appropriate menu.

On April 11, 2007, Mr. Little filed a Request to Staff ("RTS") with Chaplain Biberstine and Deputy Warden Anita Trammell complaining that MACC had "no policy on vegetarians" and requesting that his "religious diet [be] honored." The next day, Mr. Little filed a religious diet request form. Because the form did not contain an option to request a vegan diet, Mr. Little wrote in "vegan vegetarian diet." Deputy Warden Trammell answered Mr. Little's religious diet request that same day, crossing out the hand-written line "vegan vegetarian diet" and approving Mr. Little for a "meat free" diet. Additionally, Deputy Warden Trammell issued a memorandum to Ms. Visotski instructing her that "[u]nder no circumstances will Food Service prepare meals based on an inmate's individual request." The memorandum further provided that the only special religious diets allowed were "Meat Free," "Pork Free," and "Kosher."

On April 27, 2007, Deputy Warden Trammell responded to Mr. Little's April 11 RTS, informing him that he had been placed on a "non-meat diet" and would "receive double portions of vegetables, fruit if available and peanut butter." Mr. Little immediately filed a grievance with Warden Greg Province.[1] In the grievance, Mr. Little maintained that Deputy Warden Trammell had denied his

---

[1]Mr. Little had previously filed two grievances with Warden Province. The first, filed on April 19, 2007, raised the vegan diet issue but was returned because there was no RTS attached. The second, filed on April 26, 2007, requested that Deputy Warden Trammell formally respond to Mr. Little's April 11 RTS so that he could properly appeal her decision.

request for a vegan diet in violation of his First Amendment rights. Mr. Little stated that he often went hungry because the meat-free diet Deputy Warden Trammell approved contained foods with animal byproducts that he could not eat pursuant to his faith. He also complained that he had submitted an RTS to the medical unit on April 16, 2007, concerning the health repercussions from the lack of a balanced diet, but had not yet been scheduled for an appointment, and that Chaplain Biberstein was "protect[ing] the Jews and Muslim Religions [sic] but will not protect mine."

Warden Province answered Mr. Little's grievance on April 30, 2007. In his response, Warden Province reiterated Deputy Warden Trammell's earlier determination that Mr. Little would be placed on a non-meat diet and would receive double portions of vegetables, peanut butter, and fruit, if available. On May 3, 2007, Mr. Little appealed from Warden Province's decision, raising nearly identical concerns as those asserted in his grievance. Two weeks later, Debbie Morton, the ODOC Director's Designee, returned Mr. Little's grievance appeal unanswered on the grounds that he included "more than 1 issue." Ms. Morton also indicated that the appeal improperly submitted additional issues not presented in the initial grievance and "[n]ew evidence, such as your claim that you only received two bananas and two apples on your food tray."

On June 15, 2007, Mr. Little filed a pro se complaint in the district court pursuant to § 1983. In his complaint, Mr. Little alleges that prison officials at

-4-

MACC denied him a vegan diet in violation of his rights under the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Mr. Little seeks injunctive and declaratory relief.

The ODOC transferred Mr. Little to Lawton Correctional Facility on July 25, 2007, where he again requested and was denied a vegan diet. He filed a grievance and a grievance appeal, the latter of which was returned unanswered on the basis that ODOC policy does not allow an inmate to grieve an issue that is pending in litigation.

On October 22, 2007, defendants submitted a motion to dismiss or, alternatively, for summary judgment. Although they stated that Mr. Little "properly filed" the April 27, 2007 grievance, defendants argued that his grievance appeal was procedurally defective. Defendants therefore contended that Mr. Little had not exhausted his administrative remedies. In addition, defendants argued that Mr. Little's First Amendment claim was meritless because he was already receiving a special diet based on his requests, even if it fell short of Mr. Little's "personal preferences," and that his claim had become moot because he had been transferred to another facility.

While defendants' motion was pending, Mr. Little was transferred several more times. On April 21, 2008, he filed an application for a preliminary

injunction with the district court.[2]  Mr. Little stated that he was facing "hostility, resentment and retaliation" at Joseph Harp Correctional Center ("JHCC") after again requesting a vegan diet.  He asked the court to order the ODOC Director and staff at JHCC to provide him with his desired diet "pending the outcome of this litigation."

On September 18, 2008, the district court granted defendants' motion to dismiss, finding that Mr. Little had not exhausted his administrative remedies.  It also denied Mr. Little's motion for a preliminary injunction after concluding that the motion lacked a sufficient relationship to the complaint.  Mr. Little now appeals both rulings.

## II.  DISCUSSION

A.    <u>Exhaustion of Administrative Remedies</u>

The district court found that Mr. Little had not exhausted his administrative remedies for the claims he asserted in his complaint.  "We review de novo the district court's finding of failure to exhaust administrative remedies."  *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

Under the Prisoner Litigation Reform Act ("PLRA"), a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court.  42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S.

---

[2]Mr. Little's motion was styled Application for Temporary Restraining Order.  Because he seeks injunctive relief pending the final resolution of his case, we construe it as a motion for a preliminary injunction.

731, 741 (2001).  Indeed, "unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).  Because the prison's procedural requirements define the steps necessary for exhaustion, *id.* at 218, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim . . . ."  *Jernigan*, 304 F.3d at 1032.

The ODOC has a four-step process for administrative exhaustion of prisoner claims.  Initially, a prisoner must seek to resolve any complaint by informally raising the matter with an appropriate staff member.  *See* Oklahoma Department of Corrections Inmate/Offender Grievance Process, § IV.A.  If the matter is not resolved informally, the prisoner must submit an RTS.  *Id.* § IV.B.  If the matter still remains unresolved, the prisoner may file a Grievance Report Form ("grievance") with the reviewing authority, which is usually the prison's warden.  *Id.* § V.A.  Finally, a prisoner may appeal the warden's decision to the Administrative Reviewing Authority ("ARA").[3]  *Id.* § VII.B.  "The ruling of the [ARA] . . . is final and [concludes] the internal administrative remedy available to the inmate . . . ."  *Id.* § VII.D.1.

---

[3]The grievance procedures define "Administrative Review Authority" as "[t]he director, chief medical officer, or their designee to whom the formal grievance is submitted for final appeal."  Oklahoma Department of Corrections Inmate/Offender Grievance Process, § I(E).

The parties agree that Mr. Little attempted to comply with all four steps of the grievance process with regard to his desired diet. His grievance appeal, however, was returned unanswered by the ARA—Ms. Morton—because it contained "more than 1 issue." Defendants argue that because Mr. Little failed to obtain a ruling on the merits of his grievance appeal, he did not exhaust his administrative remedies. Mr. Little contends, however, that he has exhausted all "available" administrative remedies. He argues that the ODOC rendered the final step of the grievance process unavailable to him by improperly rejecting his appeal and by not providing him with an opportunity to resubmit it. We agree with Mr. Little that the ARA lacked the authority to reject his appeal for raising more than one issue and thereby prevented him from completing the grievance process.

Under a plain reading of the ODOC grievance procedures, the ARA does not have the authority to reject an appeal because it contains multiple issues. Although the procedures expressly state that a prisoner may raise only "one issue or incident" in both the RTS and the grievance, there is no comparable limitation on appeals to the ARA. *Compare id.* §§ IV.B.2 and V.A.4 *with* § VII. Moreover, the grievance appeal provisions provide that "[a]dditional issues submitted in the grievance appeal and not presented in the initial grievance . . . will not be addressed." § VII.B.5. Although this language clearly informs prisoners that issues raised for the first time to the ARA will not be considered, it also implies

that if an otherwise properly filed grievance appeal raises more than one issue, the previously submitted issue will be considered.

Other provisions of the grievance procedures support this reading. Section V.A.7, for example, expressly grants the warden the power to "return the grievance unanswered for proper completion" when a prisoner's grievance contains a procedural defect. Again, however, the grievance procedures do not endow the ARA with similar authority. Thus, the ARA exceeded its authority when it returned Mr. Little's appeal unanswered.

We have previously noted that the PLRA only requires the exhaustion of "available" administrative remedies. *Jernigan*, 304 F.3d at 1032; 42 U.S.C. § 1997(e)(a) (requiring exhaustion of "such administrative remedies as are available"). In fact, we have stated that district courts are "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials" before dismissing a claim for failure to exhaust. *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy "unavailable" and a court will excuse the prisoner's failure to exhaust. *See Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002) (en banc) ("[W]e have held that inmates cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies."). That is precisely the case

before us today.

Mr. Little asserted his right to a vegan diet at every level of the administrative process. To the extent that Mr. Little asserted additional issues in his grievance appeal, the ARA was authorized to ignore them and address only the merits of the diet issue. It was not, however, authorized to reject his grievance appeal in toto. Because the ARA exceeded its authority when it rejected Mr. Little's grievance appeal, it rendered that final step of exhaustion unavailable. Accordingly, we excuse Mr. Little's failure to exhaust administrative remedies regarding his claim to a vegan diet as part of his religious practices and hold that the district court erred in dismissing his complaint.

B.    Motion for a Preliminary Injunction

The district court denied Mr. Little's motion for a preliminary injunction as insufficiently related to the conduct addressed in his complaint. We review the denial of a preliminary injunction for abuse of discretion. *Wilderness Workshop, et al. v. U.S. Bureau of Land Mgmt., et al.*, 531 F.3d 1220, 1223 (10th Cir. 2008). "An abuse of discretion occurs only when the trial court bases its decision on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling." *Id.* at 1223–24. "We have previously characterized an abuse of discretion as an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009) (quotations omitted).

When seeking a preliminary injunction, "the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *Id.* (citing *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009)). In addition, the movant must establish "a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). A mandatory preliminary injunction—one which requires the nonmoving party to take affirmative action—is "an extraordinary remedy" and is generally disfavored. *Tyson Foods, Inc.*, 565 F.3d at 776. Before a court may grant such relief, the movant must "make a heightened showing of the [] four factors." *Id.*

In his motion, Mr. Little sought an injunction directing prison officials at JHCC to provide him with a vegan diet, including fruits, vegetables, and protein substitutes, pending the resolution of this case. In ruling on the motion, the district court noted that Mr. Little requested relief only against prison officials at JHCC, but that he had not attempted to amend his complaint to include the JHCC claims nor had he alleged that the defendants named in the complaint participated in the alleged deprivations at JHCC. Furthermore, neither the complaint nor the motion for a preliminary injunction alleges a system-wide denial of Mr. Little's First Amendment rights. In fact, Mr. Little concedes in his motion for a

-11-

preliminary injunction that he received his desired diet at other ODOC facilities, undercutting any potential claim of system-wide denial. Therefore, the district court held that "[a]lthough plaintiff's new allegations might support relief against the JHCC officials," the claims did not support the issuance of a preliminary injunction in this case.

Considering the standards applicable to the grant of a preliminary injunction and the allegations in the complaint and motion for a preliminary injunction, we cannot say that the district court's conclusion was a manifestly unreasonable judgment. Accordingly, we affirm the denial of Mr. Little's motion for a preliminary injunction in this case.

### III.  CONCLUSION

For the foregoing reasons, we REVERSE the district court's order dismissing Mr. Little's complaint and REMAND for further proceedings. We AFFIRM the district court's denial of his motion for a preliminary injunction.