**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 12, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MICHAEL A. CAMPBELL,

    Plaintiff - Appellant,

v.

JODY JONES, in her official and
individual capacities; NADINE
KELLOGG, in her official and individual
capacities; REBECCA MAKER, in her
official and individual capacities,

    Defendants - Appellees.

No. 16-6287
(D.C. No. 5:13-CV-00926-R)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

Michael A. Campbell, a pro se Oklahoma inmate, filed this 42 U.S.C. § 1983

action, claiming prison officials violated his constitutional rights by withholding his

medication and denying him treatment after he suffered a stroke. The district court

granted defendants summary judgment, ruling that Mr. Campbell failed to exhaust his

administrative remedies. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

The administrative grievance process for Oklahoma prisoners is well documented. It requires an "informal consultation with staff, then three written steps: a Request to Staff form, a formal grievance, and an appeal to the administrative review authority [ARA]." *Thomas v. Parker*, 609 F.3d 1114, 1117 (10th Cir. 2010). Appeals to the ARA, which includes the chief medical officer (CMO), complete the administrative grievance process. *Little v. Jones*, 607 F.3d 1245, 1249 & n.3 (10th Cir. 2010). Inmates facing a "substantial risk of personal injury or other irreparable harm" may submit an emergency grievance directly to the reviewing authority, R., Vol. 2 at 200 (Okla. Dep't of Corr. (ODOC) Offender Grievance Process OP-090124 § VIII.A), which is "[t]he facility head or facility correctional health services administrator (CHSA)," *id.* at 188 (Offender Grievance Process OP-090124 § I.E).

II

Mr. Campbell has high blood pressure. On December 30, 2012, his cell flooded with sewage, forcing him to evacuate and abandon his blood-pressure medication. After six days of unsuccessfully requesting replacement medication from the prison's medical staff, specifically defendants Maker and Kellogg, Mr. Campbell suffered a stroke. He was hospitalized for three days and discharged back to prison with new prescriptions and instructions to follow-up with the prison's doctor. Thirteen days later, however, he still had not been seen for a follow-up or been given his replacement medication.

Consequently, on January 22, 2013, Mr. Campbell submitted a detailed, two-page emergency grievance to the CMO, Genese McCoy, explaining his circumstances and

2

asking that he be treated in accord with his discharge instructions.[1]  He also asked that the prison's medical staff be made to understand that withholding his medication caused him to suffer a stroke and was endangering his life.  Last, he asked that defendants be terminated.  The CMO returned the grievance unanswered, stating it was not an emergency, it sought disciplinary action against the staff (which could not be addressed through the grievance process), and it should have been submitted to the facility's CHSA, defendant Jody Jones.

Given this latter directive, Mr. Campbell sent Ms. Jones, the CHSA, a Request to Staff on January 31, asking that she implement a policy to ensure that prisoners receive their medication to avoid "an unnecessary stroke like what happened to me."  R., Vol. 1 at 63.  Ms. Jones replied, "Medication administration policy exists."  *Id.*

Dissatisfied with this response, Mr. Campbell submitted a nearly identical copy of his emergency grievance to the prison's warden on February 12, seeking to implement the same policy he sought in his Request to Staff.  The warden's designee returned the grievance unanswered, stating it should have been filed with the prison's CHSA, Ms. Jones.

---

[1]  By this date, January 22, Mr. Campbell had filed three other documents that did not advance his efforts to exhaust.  On January 2, he filed a request for medical services, asking for a knee brace and replacement medication.  He was told that replacement medication was forthcoming.  On January 10, he submitted a Request to Staff, seeking to implement a policy to ensure nurses did not withhold high-blood pressure medication and urging that defendant Maker be terminated.  The Request to Staff was returned unanswered because it sought disciplinary action against a staff member, which could not be addressed through the grievance process.  On January 14, Mr. Campbell submitted a Request to Staff, seeking the name of a staff member who was involved with his care.  The Request to Staff was answered that same day.

Mr. Campbell therefore submitted his grievance to Ms. Jones on February 18. She returned it unanswered for two reasons, the second of which was invalid: First, she wrote, "No additional pages allowed except for the original 'Request to Staff.'" *Id.* at 68. Second, she wrote, "All medical grievances will be submitted to the facility CHSA," *id.*, which it clearly was. Also, Ms. Jones warned him that he could be subject to grievance restrictions and, in a separate correspondence, she stated that because he failed to rectify the procedural errors in his grievance—apparently by failing to remove any additional pages—he "waived/forfeited the opportunity to proceed in the grievance process" under Offender Grievance Process OP-090124 § VI.B.6, *id.* at 70. This was incorrect, however, because the only previously identified procedural error was Mr. Campbell's mistake in sending his February 12 grievance to the warden rather than the CHSA, which he corrected. In any event, Mr. Campbell resubmitted his grievance to Ms. Jones, prompting her to impose grievance restrictions under Offender Grievance Process OP-090124 § IX. It is undisputed that Mr. Campbell did not submit a final grievance appeal to the CMO.

A magistrate judge determined that, under these circumstances, there was an inference that the final stage of the grievance process was unavailable. The district court declined to adopt that conclusion, however, ruling that Ms. Jones' error in rejecting Mr. Campbell's grievance did not render the final administrative appeal stage unavailable and Mr. Campbell's failure to pursue it demonstrated that he failed to exhaust. The court therefore granted summary judgment to defendants on exhaustion grounds, and Mr. Campbell appealed.

4

III

"We review summary judgment decisions de novo, applying the same legal standard as the district court." *Tuckel v. Grover*, 660 F.3d 1249, 1251 (10th Cir. 2011) (internal quotation marks omitted). "Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted). Because Mr. Campbell is pro se, we afford his materials a liberal construction but do not act as his advocate. *See United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).

"There is no question that exhaustion is mandatory under the Prison[] Litigation Reform Act (PLRA) and that unexhausted claims cannot be brought in court." *Thomas*, 609 F.3d at 1117 (brackets and internal quotation marks omitted). Exhaustion is required "[e]ven where the 'available' remedies would appear to be futile at providing the kind of remedy sought." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Remedies are unavailable if prison officials are "unable or consistently unwilling to provide any relief," if "no ordinary prisoner can make sense of what [the grievance process] demands," or if "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016). "[P]risoners must complete the administrative review process in accordance with the applicable procedural rules[]—rules that are defined not by the PLRA, but by the prison grievance process itself." *Thomas*, 609 F.3d at 1118 (internal quotation marks

5

omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim . . . ." *Jernigan*, 304 F.3d at 1032.

Our review of the record confirms that Mr. Campbell failed to exhaust his administrative remedies. Although Ms. Jones rejected his February 18 grievance and incorrectly stated that he waived or forfeited his participation in the grievance process, Mr. Campbell did not avail himself of a final appeal to the CMO, who might have rectified the error and granted his requests. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006) ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court . . . ." (internal quotation marks omitted)); *see also* R., Vol. 2 at 197 (Offender Grievance Procedure OP-090124 § VII.A.2 (stating that an "offender may appeal . . . [p]robable error committed by the reviewing authority.")). Nor did he challenge Ms. Jones' imposition of restrictions, which also was appealable. *See* R., Vol. 2 at 202 (Offender Grievance Procedure OP-090124 § IX.A.2) ("If the determination of abuse of the process is taken at the first level of review, the action is appealable to the appropriate administrative review authority."). Mr. Campbell failed to avail himself of these remedies, and his failure to complete the grievance process demonstrates he did not exhaust. *See Jernigan*, 304 F.3d at 1032.

Mr. Campbell offers three arguments for excusing his failure to complete the grievance process. He first relies on his emergency grievance, arguing that his only option was to file the emergency grievance with Ms. McCoy, the CMO, and once she rejected it, he exhausted his remedies because any appeal to her would have been

6

futile and redundant. But there is no futility exception to the exhaustion rule, *see Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001), and there would have been no redundancy if Mr. Campbell had submitted his emergency grievance to the reviewing authority, Ms. Jones—the CHSA, rather than the CMO, as provided by OP-090124 § VIII.A, *see* R., Vol. 2 at 200 ("[Emergency g]rievances may be submitted directly to the reviewing authority . . . .").[2] Under those circumstances, an unfavorable response would have been appealable to the CMO pursuant to OP-090124 § VIII.B-C. Mr. Campbell's failure to follow these procedural directives does not excuse him from them. *See Little*, 607 F.3d at 1249 ("[A]n inmate may only exhaust by *properly* following all of the steps laid out in the prison system's grievance procedure." (emphasis added)).

Second, Mr. Campbell recites a portion of the magistrate judge's report and recommendation, which concluded there was an inference that defendants thwarted his efforts to exhaust the final appeal stage of the administrative process. The magistrate judge reasoned that Ms. Jones gave an invalid reason for denying the February 18 grievance, refused to allow Mr. Campbell to resubmit it, stated he waived or forfeited his participation in the grievance process, and threatened to

---

[2] There is an option for filing an emergency grievance directly with the ARA or CMO "[i]f the complaint involves the reviewing authority and is of a sensitive nature." R., Vol. 2 at 200 (Offender Grievance Process OP-090124 § VIII.A.4). Although Mr. Campbell references this provision, he offers no developed argument as to how he invoked or satisfied it, nor does he cite anything in the record indicating that he previously raised such an argument. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]he court cannot take on the responsibility of serving as the [pro se] litigant's attorney in constructing arguments and searching the record.").

7

impose grievance restrictions (in fact, she eventually did impose restrictions). Mr. Campbell seems to suggest this all rendered the final appeal stage unavailable under our decisions in *Little* and *Tuckel v. Grover*, 660 F.3d 1249 (10th Cir. 2011), but we disagree.

As the district court correctly explained, Mr. Campbell's failure to pursue a final appeal with the CMO distinguishes his case from *Little*, where the inmate took the final appeal to the ARA and the ARA incorrectly rejected it, 607 F.3d at 1248, 1250. Under those circumstances, we stated that "[b]ecause the ARA exceeded its authority when it rejected [the] grievance appeal, it rendered that final step of exhaustion unavailable." *Id.* at 1250. Mr. Campbell, however, never appealed to the CMO. Nor is his case similar to *Tuckel*, where a prison official apparently recommended that several inmates assault the plaintiff in retaliation for filing a grievance. 660 F.3d at 1251. We recognized that "when a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation, that process can no longer be said to be 'available.'" *Id.* at 1252-53. But here, there is no evidence that officials attempted to threaten, intimidate, or confuse Mr. Campbell. Ms. Jones gave an invalid reason for denying a grievance and incorrectly attempted to exclude him from the administrative process. These decisions were appealable, and nothing prevented Mr. Campbell from challenging them.

Finally, Mr. Campbell offers a hybrid of his first two arguments, asserting his remedies were unavailable under *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016), and his emergency grievance to the CMO satisfied the final step of ODOC's grievance

8

policy.  But he offers nothing to satisfy *Ross*'s criteria for deeming remedies unavailable, and we decline to interpret Ms. Jones' mistakes as an affirmative effort to thwart the process.

As for Mr. Campbell's emergency grievance, it should have been filed with the CHSA.  *See* R., Vol. 2 at 200 (Offender Grievance Process OP-090124 § VIII.A).  To the extent he insists that ODOC's process "allows an alternative final step which provides (either or) an appeal to the Administrative Review Authority or to the Chief Medical Official," Aplt. Br. at 3T, that option exists in the *normal*, non-emergency grievance procedure, *see* R., Vol. 2 at 197 (Offender Grievance Process OP-090124 § VII.B ("The offender may make a final appeal to the administrative review authority or chief medical officer, whichever is appropriate . . . .")).

Mr. Campbell has filed a motion to supplement the record to support his assertion that an emergency grievance submitted directly to the CMO concludes the administrative process.  He seeks to supplement the record with an excerpt of ODOC's updated emergency grievance process and another inmate's grievance material, specifically a letter from ODOC's medical services manager.  These materials fail to establish that Mr. Campbell's emergency grievance exhausted his remedies.  The updated ODOC policy was inapplicable at the time Mr. Campbell filed his grievance, and the excerpt of that policy is substantively identical to the governing provisions here.  Moreover, the letter states that the inmate filed a "Misconduct/Grievance Appeal to Administrative Review Authority" concerning a complaint raised in an "emergency grievance."  Mot. to Supp. at 4.  The appeal was

returned unanswered in part because "[t]he medical administrative reviewing authority's ruling is final." *Id.* Mr. Campbell says this proves he was not required to appeal the CMO's ruling, but this letter does not indicate whether the inmate's grievance was denied as a non-emergency, as Mr. Campbell's was, or whether it was resolved on some other basis. The letter is not probative of Mr. Campbell's situation and does not demonstrate that he exhausted his administrative remedies.

IV

The judgment of the district court is affirmed. The motion to supplement the record is granted. Mr. Campbell's motion to proceed on appeal without prepayment of costs and fees is granted. The relevant statute, 28 U.S.C. § 1915(a)(1), does not permit litigants to avoid payment of filing and docketing fees, only *prepayment* of those fees. Although we have disposed of this matter on the merits, Mr. Campbell remains obligated to pay all filing and docketing fees. He is directed to continue making partial payments until all fees have been paid in full.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge
