**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FREDERICK RIDEOUT GRAY, JR.,

    Plaintiff - Appellant,

v.

PATRICIA SORRELS; DAVID
MARLAR; NANCY COPPEL; AMBER
ROBINSON; ALICIA SCULL; BUSTER
HARRIS; BUDDY HONAKER; JAMES
HOWARD; SUSAN SHIELDS;
PATRICIA STEM; WILLIAM TAYLOR,

    Defendants - Appellees.

No. 19-7060
(D.C. No. 6:16-CV-00145-RAW-SPS)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **MATHESON**, and **EID**, Circuit Judges.
_____

Appellant Frederick Gray is an inmate held by the Oklahoma Department of

Corrections ("ODOC"). He filed this *pro se* 42 U.S.C. § 1983 action against ODOC

officials who, he alleges, violated his constitutional rights. The district court dismissed

Gray's claims, because he failed to exhaust the ODOC's grievance process as required by

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously
that oral argument would not materially assist in the determination of this appeal. *See*
Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted
without oral argument. This order and judgment is not binding precedent, except under
the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R.
32.1.

the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

While incarcerated at the Oklahoma State Penitentiary ("OSP") in McAlester, Oklahoma, Gray suffered from severe pain and swelling in his knees. And after a cellmate attacked him, he also experienced discomfort in his neck. Focusing on a failure to provide him timely medical care, Gray sought relief for several alleged constitutional violations during his time at the OSP. The district court dismissed the amended complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Gray appealed and we affirmed in part, and reversed and remanded in part. *See Gray v. Sorrels*, 744 F. App'x 563, 566 (10th Cir. 2018) (unpublished). On remand, three claims remained: a claim against OSP Nurse Nancy Coppel alleging she denied Gray medical treatment; a claim against OSP Resident Physician Dr. David Marlar concerning Gray's neck injury; and an equal protection claim against Coppel and OSP Nurses Amber Robinson and Alicia Scull. *Id.* at 574. After filing a *Martinez* report at the direction of the district court, the remaining defendants moved for summary judgment, alleging, among other things, that Gray failed to exhaust his administrative remedies for the remanded claims. Finding there were no genuine issues of material fact concerning Gray's failure to properly exhaust his administrative remedies, the district court granted the motion for summary judgment. Gray now appeals.

2

## II.

"We review de novo the district court's finding of failure to exhaust administrative remedies." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (internal quotation marks and citation omitted). Because Gray is *pro se*, we afford his materials a liberal construction but do not act as his advocate. *See United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) (citation omitted).

On appeal, Gray raises two main arguments: (1) prison officials caused any defects in his failure to exhaust the requisite administrative remedies and (2) the defendants should not have been allowed to raise the affirmative defense of non-exhaustion in their motion for summary judgment. After a careful review of the record, we agree with the district court that Gray failed to exhaust his available administrative remedies.

### A. Exhaustion of Administrative Remedies

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). An inmate properly exhausts a claim by utilizing each step the prison holds out for resolving the claim internally and by abiding "with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Critically, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (internal quotation marks and citation omitted).

3

But an inmate need only exhaust those administrative remedies that are available. *See Little*, 607 F.3d at 1250 (citation omitted). "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Id.* (citation omitted).

The administrative grievance process for Oklahoma inmates is well documented.[1] With this framework in mind, we review the dismissal of Gray's claims. Gray's first argument is that any defects in the exhaustion process "were procured from the action(s) and inaction(s) of prison officials." Aplt. Br. at 3. At issue are five grievances and one appeal during the time period relevant to this action.[2] We address each grievance in turn.

First, in Grievance 2015-34 (received September 25, 2015), Gray sought a response to a Request to Staff ("RTS") he submitted on August 10, 2015. ROA Vol. I at 53. But this grievance was returned unanswered on account of Gray's failure to attach the RTS. *Id.* at 52. After all, the ODOC process requires that an RTS accompany the

---

[1] The ODOC has a four-step process for administrative exhaustion of inmate claims. Initially, an inmate must seek to resolve any complaint by informally raising the matter with an appropriate staff member within three days of the incident. *See* ROA Vol. II at 154. If the matter is not resolved, the inmate must submit a Request to Staff. *Id.* If the matter still remains unresolved, the inmate may file an "Offender Grievance Form" with the appropriate reviewing authority. *Id.* at 156. After receiving a response to one's formal grievance, the inmate may appeal that decision to the Administrative Review Authority ("ARA") or to the Health Services Administrative Review Authority. *Id.* at 159–60. Only upon proper completion of all four steps has the inmate exhausted administrative remedies. *See Little*, 607 F.3d at 1249.

[2] It should be noted at the outset that Gray failed to grieve his claim that the denial of treatment was based on race. And ODOC's process makes clear that discrimination is one of the categories signaled as appropriate for resolution. *See* ROA Vol. II at 154.

grievance. *See* ROA Vol. II at 156 ("If a complaint is not resolved informally, the offender may obtain and complete the 'Offender Grievance Form' (DOC 090124A) and submit the grievance form, along with the 'Request to Staff' . . . to the appropriate reviewing authority."). Once notified of this deficiency at the formal grievance stage, Gray failed to amend the grievance or file an appeal.[3] *Id.* at 451.

Grievance 2015-35 (received September 28, 2015) concerned the same RTS at issue in Grievance 2015-34. *Id.* In this grievance, Gray requested amongst other actions to receive compensation for how long it took him to receive treatment. *Id.* at 171. On December 3, 2015, Gray submitted a follow-up grievance to the Medical Services Administrator, Buddy Honaker, requesting that the Health Services Administrator, Patricia Sorrels, respond to Grievance 2015-35. *Id.* at 173. On January 7, 2016, Honaker returned Gray's grievance "unanswered" for two procedural defects: contravening prison policy by requesting monetary compensation and using an "obsolete" form. *Id.* at 174. The ODOC's Offender Grievance Process states in II.B. that "[g]rievances shall not be submitted requesting monetary compensation." *Id.* at 152. Gray's next available option would have been to resubmit the grievance within 10 calendar days of this notice of improper filing. *Id.* at 156–57. But he failed to do so. Nor is there any record of Gray having submitted an appeal for this grievance. *Id.* at 451.

---

[3] Also problematic for Gray was that he submitted Grievance 2015-34 after the relief he requested in his August 10, 2015 RTS had already been granted. In this RTS, Gray requested medication, an x-ray, and other treatment for his knees. *See* ROA Vol. II at 169. But he received x-rays on August 17, 2015 and a Naprosyn prescription on September 2, 2015. *See id.*; Aple. Br. at 8 n.1.

In Grievance 2015-40, submitted October 6, 2015, Gray stated he was "accousted [sic] and assaulted by my former cell partner." *Id.* at 176. He sought a policy change regarding psychiatric medications, and he requested compensation for his injuries. *Id.* Although this grievance represents the sole one Gray appealed, Grievance 2015-40 does not concern any of the claims remanded by this Court for consideration. *Sorrels*, 744 F. App'x at 574. In fact, we specifically dismissed a claim against several defendants concerning Gray's cellmate's need for antipsychotic medication. *Id.* at 571.

On October 21, 2015, Gray submitted a "Sensitive" grievance requesting a response to Grievance 2015-35 and an end to perceived retaliation for his grievance activity. ROA Vol. II at 186. The Medical Services Administrator returned this grievance unanswered, in part, because he determined Gray's grievance did not qualify as sensitive under ODOC's Offender Grievance Process section VIII.A. *See id.* at 188. Although Gray could have appealed this decision, he failed to avail himself of this option. *See id.* at 163 ("The offender may appeal that response [about whether this grievance is in fact an emergency or sensitive grievance] . . . .").

Finally, Gray submitted Grievance 2016-03 on January 22, 2016. He requested an MRI to determine "what the true issue is" with his knees, and he wanted approval for a knee sleeve for his left knee. *Id.* at 342. Three days later, this grievance was returned unanswered, because Gray included other attachments instead of the required RTS. *Id.* at 343. Once again, Gray took no steps to amend this grievance. And the record indicates he did not appeal this decision. *Id.* at 452.

6

Throughout his opening and reply briefs, Gray repeatedly asserts that prison officials Sorrels and Honaker "thwarted, hindered, prevented, and frustrated [him] by hindering him [from] avail[ing] himself" of the proper grievance procedures. *See, e.g.*, Aplt. Br. at 2. As for the manner in which they prevented him from exhausting the administrative remedies, Gray offers that "former Appelles [sic] Patricia Sorrels and Buddy Honaker actions and inactions are the direct results in the defects in exhaustion." *Id.* at 3(e). Without pointing to any particular instance, he claims they broadly provided him untimely responses. *Id.* at 3(h). Gray's contentions are unsupported by the record. As best we can tell, Gray's failure to exhaust four of his grievances ultimately rests with himself: he failed to properly submit these grievances in compliance with ODOC's procedural rules. And the one grievance he actually appealed concerned issues previously dismissed by our court.

Even if prison officials had been untimely in responding to Gray, ODOC's grievance process offered him opportunities to rectify the situation. For example, if 30 calendar days passed with no response to an RTS, then the process permitted Gray to file a grievance to the reviewing authority requesting a response. *See* ROA Vol. II at 155. Similarly, if Gray failed to receive a response within 30 calendar days for one of his formal grievances, then the process empowered him to send a follow-on grievance to the ARA asserting his grievance was not answered. *See id.* at 158.

Neither can we accept Gray's alternative argument—that "[t]he excessively technical grievance non-responses can make the administrative remedy unavailable." Aplt. Br. at 3(h). That there are multiple procedural steps Gray must comply with to

7

properly exhaust the process does not excuse an inmate's failure to abide by the rules. "Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford*, 548 U.S. at 89 (internal quotation marks and citation omitted).

To meet the PLRA's exhaustion requirement, an inmate must "use[ ] all steps that the agency holds out" in "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90 (internal quotation marks and citation omitted). This Gray did not do. Once notified of deficiencies at the formal grievance stage, Gray never appropriately refiled four of these grievances, and this is enough to bar his claims under the PLRA. Taking some—but not all—of the steps in the grievance process does not constitute proper exhaustion. *See Thomas*, 609 F.3d at 1118. The district court did not err in concluding that Gray failed to exhaust his available administrative remedies.

## B. Waiver of Exhaustion Defense

Gray's second argument is that because the defendants failed to raise the non-exhaustion defense in their 12(b)(6) motion to dismiss, they should have been precluded from raising it during their motion for summary judgment. *See* Aplt. Br. at 3. But the statutory exhaustion requirement of § 1997e(a) is mandatory, and the district court is not authorized to dispense with it. For that reason, we have previously declined to find that a district court erred when it permitted the defendants to raise this exhaustion defense after the 12(b)(6) stage. *See Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003) (per curiam) ("Nor are we persuaded that the district court erred in not finding that defendants had waived their exhaustion defense by waiting so late to raise it.").

## III.

In failing to properly exhaust ODOC's administrative remedies, Gray is barred from pursuing his remaining claims under the PLRA. Accordingly, the district court did not err in granting summary judgment. We therefore **AFFIRM**.

Entered for the Court


Allison H. Eid
Circuit Judge