**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

**February 16, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

JOHNNY L. HARDEMAN, a/k/a Lo'Re
Pink,

     Plaintiff - Appellant,

v.

JAMES J. SMASH, Mental Health
Administrator; DR. LEEANN SELF,
Mental Health Department; DR. JANA
MORGAN, Chief Mental Health
Administrator; REGINA
VANBLERCIOM, Medical Administrator;
JERRY PERRY, Unit Manager;
MILLICENT NEWTON EMBRY,
Regional Director I; CHARLES RODEN,
Policy and Procedure Administrator, a/k/a
Chuck Roden; JOEL BRENT MCCURDY,
M.D., Chief Medical Officer; MIKE
CARPENTER, OSP Warden; DAVID
CINCOTTA, General Counsel,

     Defendants - Appellees,

and

PATRICIA JONES-PILKINGTON;
BUDDY HONAKER,

     Defendants.

No. 21-7018
(D.C. No. 6:19-CV-00110-JFH-SPS)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding

_____

Before **HARTZ**, **BACHARACH**, and **CARSON**, Circuit Judges.

_____

Johnny L. Hardeman, whose name has been legally changed to Lo'Re Pink, an Oklahoma state prisoner proceeding pro se, appeals from the district court's opinion and order disposing of her civil-rights action under 42 U.S.C. § 1983.[1]  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

Hardeman is an inmate serving a life sentence at the Oklahoma State Penitentiary (OSP). Her complaint alleges that officials at OSP and the Oklahoma Department of Corrections (ODOC) were deliberately indifferent to her medical and mental-health needs and otherwise violated her civil rights through numerous acts of retaliation and discrimination.

In December 2015, Hardeman was examined by ODOC psychologist Heather Diaz, who made a diagnosis of "Suspected" gender-identity disorder.  R., Vol. II at 85. In May 2017 a different ODOC psychologist, Patricia Jones-Pilkington, conducted an "evaluation . . . to document the presence or absence of the diagnostic criteria for Gender Dysphoria per the DSM-5," and provide "any additional information relevant to . . .

_____

precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because of the name change, we use the corresponding pronouns.

whether or not it is in the best interest of [Hardeman's] psychological health to provide hormone replacement therapy." *Id.* at 34. As part of the evaluation, she reviewed all available medical records of Hardeman and conducted a six-hour interview that included psychological testing. Jones-Pilkington found that Hardeman "does not meet the criteria for Gender Dysphoria at this time," but does "meet the diagnostic criteria for Histrionic Personality Disorder." *Id.* at 34. Further, she opined "it would be irresponsible to provide . . . Hardeman hormone replacement therapy," because the "radical changes in emotions, physiology, and even cognitions that can occur while taking hormones would have the potential of increasing . . . Hardeman's already significant distress," which Jones-Pilkington attributed to "the restrictive environment of OSP." *Id.* at 40-41.

Despite these negative findings, Hardeman continued to insist on receiving treatment for gender dysphoria, including hormone therapy and the right to purchase items such as make-up and female attire, and demanded that officials either accept Diaz's diagnosis or conduct a supplemental evaluation "to break the tie." R., Vol. I at 33. When these requests were denied, Hardeman sued.

Hardeman's complaint, liberally construed, asserts deliberate indifference to her medical and mental-health needs; claims for retaliation and discrimination, including the refusal to update policies for transgender inmates and to change the name on her records to Lo'Re Pink; and state-law claims for intentional infliction of emotional distress.

Following the filing of a *Martinez* report,[2] the defendants moved to dismiss or for summary judgment. The district court granted the motion to dismiss as to defendants Jones-Pilkington and Buddy Honaker for failure to timely serve them as required by Fed. R. Civ. P. 4(m), and as to Joel McCurdy and David Cincotta for lack of alleged personal participation in the alleged constitutional violations. The court also dismissed the discrimination and retaliation claims for failure to exhaust administrative remedies. And although the court ruled that Hardeman had exhausted her request for a supplemental gender-dysphoria examination, it granted summary judgment because there was no evidence of deliberate indifference. The court also declined to exercise supplemental jurisdiction over any state-law claims.

## II. DISMISSAL OF DEFENDANTS JONES-PILKINGTON AND HONAKER

Defendant Jones-Pilkington conducted the second gender-dysphoria examination and defendant Honaker denied Hardeman's grievance appeal of the denial of her request for a supplemental gender-dysphoria examination. Because Hardeman was a prisoner proceeding *in forma pauperis* (*ifp*), the district court ordered the United States Marshals Service (USMS) to serve process on these and the other defendants. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3). Honaker and Jones-Pilkington were never served,

---

[2] *See Martinez v. Aaron*, 570 F.2d 317, 319-20 (10th Cir. 1978) (per curiam) (approving district court's practice of ordering preparation of prison-administration report in a prisoner's suit alleging constitutional violations by prison officials).

however, because the USMS was unable to locate Honaker and several attempts to serve Jones-Pilkington were unsuccessful.

After nearly two years of failed attempts to obtain service, the district court dismissed Honaker and Jones-Pilkington without prejudice for failure of timely service under Fed. R. Civ. P. 4(m). The court noted that although it is required to effect service for an *ifp* litigant, it is the litigant's responsibility to provide adequate information to obtain service. *See Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) ("[T]he [USMS] is not charged with finding a defendant who has moved without providing an accessible forwarding address.").

We review for abuse of discretion the district court's order to dismiss for failure to timely serve process. *See Jones v. Frank*, 973 F.2d 872, 872 (10th Cir. 1992). "A district court abuses its discretion when it renders an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Burke v. Regalado*, 935 F.3d 960, 1011 (10th Cir. 2019) (internal quotation marks omitted).

The district court did not abuse its discretion when it ruled that "the USMS has made all reasonable efforts to serve . . . Honaker and Jones-Pilkington." R., Vol. I at 435. The USMS was not required to locate Honaker, and Hardeman has provided no authority that the USMS was required to make an unlimited number of attempts to serve Jones-Pilkington. We affirm the dismissal without prejudice of these two defendants.

### III. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act (PLRA) provides that a prisoner cannot bring an action "with respect to prison conditions under section 1983 . . . until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA . . . ."); *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court"). "[S]ubstantial compliance is insufficient." Rather, proper exhaustion requires compliance with all of the prison's grievance procedures, including "deadlines and other critical procedural rules[,] because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). For example, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

We review de novo the district court's failure-to-exhaust ruling. *See Jernigan*, 304 F.3d at 1032. The court carefully examined Hardeman's grievance proceedings in light of the required ODOC procedures and determined that she had properly exhausted only one of her § 1983 claims—namely, the claim that her request for a supplemental gender-dysphoria evaluation was improperly denied. We agree with the court's determination because there is no evidence that Hardeman properly completed the grievance process with respect to any other incidents or issues.[3] The

---

[3] Hardeman did initiate a grievance concerning changing the name on her records to Lo'Re Pink; but that grievance process was not completed until after she filed suit.

district court's dismissal of all claims other than the one based on the failure to provide a supplemental evaluation was therefore proper.

Hardeman argues that the grievance she exhausted included more than a complaint about failure to provide a supplemental gender-dysphoria evaluation. But the grievance rules promulgated by the ODOC state that "[o]nly one issue or incident is allowed per grievance." R., Vol. I at 179.

## IV.  SUPPLEMENTAL GENDER-DYSPHORIA EXAMINATION

The district court granted summary judgment against Hardeman on her claim that she was improperly denied a supplemental gender-dysphoria evaluation. We review the district court's decision de novo. *See Sealock* v. *Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "Deliberate indifference involves both an objective and a subjective component."  *Sealock*, 218 F.3d at 1209 (internal quotation marks omitted).  The objective component requires the plaintiff to show that her medical need is "sufficiently serious"; that is, "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.* (internal quotation marks omitted).  We assume, without deciding, that gender dysphoria satisfies the objective component.

The subjective component requires the plaintiff to show that the prison official knew of and disregarded "an excessive risk to inmate health or safety." *Id.* (internal quotation marks omitted). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (internal quotation marks omitted).

To survive summary judgment, Hardeman needed to point to evidence allowing an inference that the served defendants consciously disregarded the possibility of gender dysphoria in failing to provide for a third examination. But there is no such evidence. When Hardeman continued to insist on treatment for "Suspected" gender dysphoria, R., Vol. II at 85, a second evaluation was conducted, and it diagnosed Hardeman with histrionic personality disorder—not gender dysphoria.

Although Hardeman disagrees with Jones-Pilkington's diagnosis, "a difference of opinion with the medical staff . . . does not rise to the level of a constitutional violation." *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993). Moreover, "a misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under our case law to satisfy the subjective component of a deliberate indifference claim." *Self*, 439 F.3d at 1234.

Hardeman continues to insist that the defendants were deliberately indifferent to her medical and mental-health needs when they failed to provide hormone therapy and items such as cosmetics and female attire. But that claim was not exhausted in so far as it extends beyond the denial of an additional gender-dysphoria examination. In any event,

the denial of hormone therapy, etc., was predicated on the diagnosis by Jones-Pilkington; so those additional claims could not survive summary judgment absent evidence that the defendants knew that the diagnosis was incorrect.  We therefore affirm the summary judgment.[4]

## V.  DISMISSAL OF STATE-LAW CLAIMS

When the district court disposed of Hardeman's § 1983 claims, it declined to exercise supplemental jurisdiction over any state-law claims.  "We review the district court's decision declining to exercise supplemental jurisdiction for an abuse of discretion."  *Strain*, 977 F.3d at 989.

Once all federal claims have been dismissed, the court may decline to exercise jurisdiction over any remaining state-law claims.  *See* 28 U.S.C. § 1367(c)(3); *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238 (10th Cir. 2020) ("The Supreme Court has encouraged the practice of dismissing state claims or

---

[4] We need not address whether the dismissal of defendants McCurdy and Cincotta could also be based on the absence of personal participation. We note, however, that the dismissal of those defendants cannot support the designation of a strike.  *See* 28 U.S.C. § 1915(g) ("In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated . . . brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.").  Here, only the claims against McCurdy and Cincotta were dismissed for failure to state claims—the remaining claims were dismissed on other grounds or resolved on the merits.  Therefore, the designation of a strike was improper.  *See Thomas v. Parker*, 672 F.3d 1182, 1183 (10th Cir. 2012) ("Because the statute refers to dismissals of 'actions,' as opposed to 'claims,' it is well established that a partial dismissal based on one of the grounds enumerated in § 1915(g) is generally not a proper basis for assessing a strike.").

remanding them to state court when the federal claims to which they are supplemental have dropped out before trial."). The district court did not abuse its discretion when it dismissed Hardeman's state-law claims.

## VI. CONCLUSION

The judgment of the district court is affirmed. We agree with the district court's grant of leave to proceed *ifp* on appeal and remind Hardeman that she is required to make partial payments until the filing fee is paid in full.

Entered for the Court

Harris L Hartz
Circuit Judge